THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
CLYDE CALLAHAM, SR., Defendant-Appellant.

First District (4th Division)   No. 76-723

Opinion filed May 18, 1978.—Rehearing denied June 8, 1978.

Howard T. Savage and Patricia Unsinn, both of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Lee T. Hettinger, Michael E. Shabat, and John J. Rayman Lieberman, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE DIERINGER delivered the opinion of the court:

This is an appeal from a judgment of the circuit court of Cook County, subsequent to a jury trial, convicting Clyde Callaham, Sr. (hereinafter called the "defendant") of involuntary manslaughter. The defendant was sentenced to five years probation with the condition he serve the first eight months on work release.

The issues presented for review are: (1) whether the indictment failed to state an offense, (2) whether the People failed to prove the defendant guilty beyond a reasonable doubt, (3) whether the court erred in refusing to instruct the jury as to the defense of compulsion and prohibiting the defendant from testifying as to his state of mind as to compulsion, (4) whether it was error to allow the decedent's sister to testify, as her testimony was prejudicial, (5) whether the defendant was denied a fair

trial when the jury heard the prosecutor cross-examine the defendant as to the reason he left his last job, (6) whether it was error to allow into evidence statements made by the defendant, where the People did not specifically disclose such statements on discovery, (7) whether it was error to instruct the jury the defendant could be found guilty of involuntary manslaughter based upon his failure to take action, and (8) whether the defendant was denied a fair trial because of the prejudicial comments made to the jury by the prosecution.

At approximately 8 p.m. on June 17, 1973, a fight occurred between a group of blacks, one of whom was the defendant, and a group of Caucasians at Calumet Park in Chicago. After receiving numerous punches and kicks the defendant, along with the group of blacks, ran to his station wagon, jumped inside and the defendant quickly drove off, in an escape. The defendant, bleeding from one eye, stopped the car next to a police car in order to receive protection. The officer, who was in the process of writing an unrelated traffic citation, saw the defendant and told him he would have to wait. Instead of waiting, the defendant drove off. He sped around a curve and twice successively veered toward groups of people, forcing them to jump away. He then veered a third time, struck Frank Stevenson from behind and knocked him several feet into the air, causing his death. The defendant failed to stop to inquire about the victim's injuries or to render aid, but instead continued to drive off. He swerved to avoid a car in the roadway and increased his speed as he left the park. The defendant stopped the car briefly, about two to three blocks outside of Calumet Park, allowing one of the passengers to wipe blood from his eye. The defendant then proceeded to drive directly to Cabrini Green housing project. He went by Mercy and Michael Reese hospitals on the way home, as well as going by several police stations, but did not stop. Instead, he went straight to his home. There, he received a telephone call from the police, asking him to come down to the police station in the morning, and he said yes. The next morning he went to defense attorney Howard Savage's office, where pictures were taken of the defendant and his auto. Mr. Savage called the police to come to get the defendant, which they did. The defendant voluntarily left with the officers. While at the police hit-and-run office, officers Manella and Duncan had a conversation with the defendant. The defendant was asked if he had any personal knowledge of a vehicle being used to run down a person in the Calumet Park area and he said he knew nothing about it. He was then transported to Area Two and placed in a lineup. After the lineup, he was asked if he wanted to say anything about the incident in the park, and he stated he had been attacked in an unknown park by a group of white youths and sustained an injury to his left eye. He said he got to the park in his car and did not know where the car was presently located.

Officer Manella typed in his police report the following: The suspect was placed under arrest and advised of his constitutional rights, and asked if he would relate to the officers what occurred on the day in question. Callaham stated he was attacked in an unknown park by a group of white youths and sustained an injury to his left eye. A statement by the accused that he did not know anything about the incident was not included in the report.

The defendant was indicted for the crime of involuntary manslaughter and a jury found him guilty of that offense. The trial court sentenced the defendant to five years probation with the first eight months to be served under the work release program. From this judgment and sentence this appeal is taken.

The defendant claims the indictment fails to state an offense.

The involuntary manslaughter section of the Illinois Criminal Code provides:

> "A person who kills an individual without lawful justification commits involuntary manslaughter if his acts whether lawful or unlawful which cause the death are such as are likely to cause death or great bodily harm to some individual, and he performs them recklessly." Ill. Rev. Stat. 1971, ch. 38, par. 9—3(a).

The indictment returned by the grand jury of the circuit court of Cook County, in this cause charges as follows:

> "* * * [O]n June 17th, 1973 * * * Clyde Callahan [sic], Senior committed the offense of involuntary manslaughter in that he, acting in a reckless manner, killed Frank Stevenson with an automobile without lawful justification* * *."

The defendant maintains the indictment was deficient in that it failed to allege the acts performed recklessly by the defendant were such as to likely cause death or great bodily harm.

Generally, an indictment is sufficient if it adequately informs the accused of the nature, cause and elements of the charge. (See *People v. Collins* (1972), 6 Ill. App. 3d 616, 286 N.E.2d 117.) Plainly put, an indictment which informs the defendant of the charge against him, enables him to prepare a defense and bars any further prosecution for the same offense, is sufficient. (*People v. Harvey* (1973), 53 Ill. 2d 585, 294 N.E.2d 269.) In *People v. Adams* (1969), 113 Ill. App. 2d 276, 252 N.E.2d 65, the court, in an appeal of an involuntary manslaughter conviction, heard an argument similar to the defendant's, and held the indictment was sufficient. We agree with the court in *Adams*.

■■ The Illinois Criminal Code provides if the indictment fails to specify the particulars of the offense sufficiently to enable the defendant to prepare his defense the court may, on written motion of defendant, require the State's Attorney to furnish the defendant with a bill of

particulars supplying whatever omissions there may have been in the indictment as may be necessary for the preparation of the defense. (Ill. Rev. Stat. 1973, ch. 38, par. 111—6.) No such motion was made by the defendant in the instant case. The indictment was sufficient and the court properly refused to dismiss it.

The defendant next claims the People failed to prove beyond a reasonable doubt the defendant was guilty of reckless conduct. Put another way, it is claimed the prosecution did not prove the defendant acted without lawful justification. To support this conclusion much emphasis is placed on the claim the defendant's conduct in traveling through the park while injured was not reckless since, as the defendant claims, he reasonably believed such conduct was necessary to prevent further injury to himself and his friends.

The concept of recklessness as included in this involuntary manslaughter charge means the defendant is charged with consciously disregarding an unjustified risk, that death or great bodily harm to another will result, and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise in the same situation.

Throughout his extensive arguments the defendant continually reverts back to the claim he was not guilty of recklessness since the extent of his injuries reduced the rationale of his thought process from one of a reasonable man to one of a man in a state of shock.

It is well settled, a jury's determination of guilt will not be set aside when the jury acted reasonably on the evidence presented and reached the only conclusion possible, beyond a reasonable doubt. (See *People v. Camberis* (1921), 297 Ill. 455, 130 N.E. 712.) However, while questions of the credibility of witnesses and the weight to be accorded to the testimony of witnesses are ordinarily for the jury, it is the duty of the reviewing court to carefully review the evidence, and if it is not sufficient to remove all reasonable doubt of the guilt of the defendant and create an abiding conviction of guilt, the conviction must be reversed (*People v. Kidd* (1951), 410 Ill. 271, 102 N.E.2d 141).

The jury heard the testimony of the witnesses as to the speed and path of the defendant's auto. During the trial the defendant recalled after blowing his nose, while talking to the police officer, "my whole sight went, everything just left. I couldn't see anything other than blue streaks, red streaks and white streaks." Upon cross-examination the defendant stated the following:

"Q. You could just see the road?

A. There were thousands of people in the park. I could see when I went in there, when I came out of that park I couldn't see hardly.

Q. You couldn't see any of the people, is that correct?

A. That's right."

The defendant then admitted he could not see any "figurines" next to the roadside.

The defendant, by his own admissions, has established he had a conscious disregard of a risk to cause death or great bodily harm to another or others. The question remaining is whether that risk was justifiable or reasonable under the circumstances.

■■ Defense witness Michael Scott, who was a passenger in the defendant's auto at Calumet Park, testified on cross-examination the rock throwing had ceased by the time the defendant's auto had reached the police car. At that time, and under those circumstances, the safe and reasonable course of action would be for the defendant to wait for further police assistance. Another reasonable thing to do would be to allow one of the passengers to drive, at least one of whom had obtained a driver's license. Instead, the defendant elected to drive himself. We hold the risk created therefrom is neither reasonable nor justified under the circumstances, and the unjustifiable risk was properly proven beyond a reasonable doubt.

The jury had an opportunity to hear the witnesses and to view their demeanor. The credibility of the defendant was damaged by impeaching evidence. The defendant testified he did not know the speed of his car as he drove out of the park. He said he steered his auto around a vehicle double-parked in the road although he admitted he had been unable to see at the time. He also testified he had not stopped to receive medical attention for his injured eye despite having passed several hospitals on the way back from the park and did not go to the hospital the night of the crime nor the morning after. In addition, the defendant made inconsistent exculpatory statements to the arresting officers. He first told the officers he did not know anything about the incident in Calumet Park, and finally admitted he was the driver only after having been identified in a lineup by four witnesses.

■■ On appeal, courts of review may not substitute their judgment for that of a jury on questions of credibility of witnesses, and may not reverse a criminal conviction unless the evidence is so improbable as to raise a reasonable doubt of guilt. (*People v. Mills* (1968), 40 Ill. 2d 4, 237 N.E.2d 697.) This is so because the jury, acting in its peculiar capacity as trier of fact, has ample opportunity to observe the demeanor of witnesses, assess their credibility and weigh the evidence. (See *People v. Stevens* (1957), 11 Ill. 2d 21, 141 N.E.2d 33.) We have made a complete search of the entire record and find the evidence fails to raise a reasonable doubt of guilt.

In a related issue, the defendant claims the court erred in sustaining the prosecution's objections to questions posed to the defendant on direct examination which were directed toward the defendant's mental state at

the time of the crime. The defendant again claims he was acting because of necessity.

■■ We have already established, even if the defendant believed his conduct was necessary to prevent injuries to himself or others, such belief was unreasonable under the circumstances. Since the reasonableness of the defendant's conduct was established by uncontradicted objective evidence, the trial court was not in error in limiting the defendant's subjective testimony as to necessity.

The defendant additionally claims the court erred in admitting the testimony of the decedent's sister, as such testimony was allegedly prejudicial to the accused.

■■ First of all, the decedent's sister was competent to testify as she was both an occurrence witness and a life and death witness. Secondly, the People have the right to use a relative of the deceased as a life and death witness even if the defense counsel wanted to stipulate to the victim's death. See *People v. Speck* (1968), 41 Ill. 2d 177, 242 N.E.2d 208.

After a complete review of the record we find nothing in the record reveals remarks so prejudicial as to have required exclusion of the witness from testifying. The trial judge properly admitted testimony by the decedent's sister.

The defendant next claims he was denied a fair trial when the jury was exposed to the prosecutor's unanswered question of the defendant, as to the reason he left his last job.

Upon cross-examination the defendant was asked the following questions:

"Q. And for eight years you were a bridgetender, is that correct?
A. Yes, sir. ·
Q. Would you like to tell the jury about the incident that caused you to lose that job?
Mr. Savage. Objection.
The witness. I can't—
The Court. State your objection.
Mr. Savage. Judge, it's irrelevant and immaterial.
The Court. Sustained."

Where objections made to improper questions are sustained the improper comment cannot usually be made the basis of reversal. However, the question still remains whether the defeated party has had a fair trial, in view of the entire record.

■■ Generally, the allowance or refusal of a motion for a new trial is within the discretion of the trial judge because in passing on the motion he has the benefit of his previous observation of the participants, their manner of speaking, and of the circumstances aiding in the determination of credibility. This deference given a trial judge by courts of review is

nowhere more justified than when applied to a question of prejudicial conduct of counsel before a jury. The trial judge is in a much better position to determine the prejudicial effect of counsel's conduct.

■■ In the case at bar the trial judge, in ruling on the defendant's motion for a new trial, determined the comments in question did not deny the defendant a fair trial. After a complete review of the record we find the jury was not substantially prejudiced by the comments in question and the court properly found the defendant was given a fair trial.

The defendant also claims it was error to admit testimony as to statements made by the defendant, where the People did not specifically disclose such statements on discovery.

The testimony complained of was in regard to statements made by the defendant to arresting officers to the effect that the defendant had no knowledge of the occurrence at Calumet Park.

The defendant filed a motion for pretrial discovery requesting written or oral statements made by the defendant as well as a list of witnesses to the statement.

■■ Supreme Court Rule 412(a)(ii) requires the People, upon written motion of defense counsel, to disclose any written or recorded statements and the substance of any oral statements made by the accused. (Ill. Rev. Stat. 1976, ch. 110A, par. 412(a)(ii).) The trial court, however, has the discretion in allowing the introduction of testimony not disclosed to the defendant by the People during discovery where there is no showing of surprise or prejudice. Moreover, a defendant cannot complain when he fails to request a continuance for investigation of the statement, and instead proceeds with trial. (See *People v. Steel* (1972), 52 Ill. 2d 442, 288 N.E.2d 355; *People v. Dees* (1977), 46 Ill. App. 3d 1010, 361 N.E.2d 1126.) In the instant case, the defense counsel failed to request a continuance and proceeded to trial. Therefore, the defendant has waived his objection for the purposes of review.

The defendant also claims the trial court erroneously tendered to the jury an instruction informing the jury the defendant could be found guilty based on his failure to perform a duty. The defendant submits there was no evidence the defendant had failed to perform a duty, and the jury was thereby misled.

■■ Illinois courts have held an instruction must be given if there is evidence in the record in support. (*People v. McEvoy* (1975), 33 Ill. App. 3d 409, 337 N.E.2d 437.) In the case at bar, the defendant's unwillingness to allow another passenger to drive, and the defendant's abandonment of police protection were both evidence of recklessness by omission to perform a duty. The evidence supports the instruction and, therefore, the instruction was properly given.

The defendant also argues he was denied a fair trial because of the

prejudicial comments made to the jury by the prosecutor. The defendant claims the prosecutor's comments during closing argument with regard to the fight, the necessity of fleeing, the defendant's failure to stay with the police car and the defendant's failure to have another passenger drive were improper because they suggested to the jury the defendant had a duty to exercise these alternatives prior to attempting to drive his auto out of the park himself.

■■ The law in Illinois is well established, a prosecutor may discuss the evidence adduced at trial and draw reasonable inferences from that evidence. See *People v. Mitchell* (1975), 35 Ill. App. 3d 151, 341 N.E.2d 153.

As already discussed, the defendant had an affirmative duty to minimize the risk created by his flight. We hold the prosecutor properly commented on the defendant's failure to exercise the alternatives available to him at the time of the crime.

In addition to the issues properly preserved at trial and raised on appeal, the defendant also raised other issues which were not properly preserved for appeal.

The issues raised, but not properly preserved for appeal are: (1) whether it was error to permit the prosecutor to comment as to the defendant exercising his right to counsel, (2) whether it was error to deny the defendant's motion to strike statements, and (3) whether the defendant was denied a fair trial because of additional prejudicial comments to the jury by the prosecutor.

Each of these additional issues was either not properly objected to or not preserved for appeal by proper motion. Since these issues are not properly before us they will not be considered for review. See *People v. Trefonas* (1956), 9 Ill. 2d 92, 136 N.E.2d 817.

For the foregoing reasons the judgment of the circuit court of Cook County is hereby affirmed.

Affirmed.

LINN and ROMITI, JJ., concur.