THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
CHARLES E. FARRIS, Defendant-Appellant.

Fourth District   No. 15657

Opinion filed March 5, 1980.—Modified on denial of rehearing April 21, 1980.

148

Duane D. Young, of Young Law Offices, P. C., and Mervin L. Beil, both of Springfield, for appellant.

Paul C. Komada, State's Attorney, of Charleston (Gary J. Anderson and Larry Wechter, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE WEBBER delivered the opinion of the court:

Defendant was found guilty by a jury in the circuit court of Coles County of two offenses of reckless homicide in violation of section 9—3(a) of the Criminal Code of 1961 (Ill. Rev. Stat. 1977, ch. 38, par. 9—3(a)), and one offense of failure to report an accident resulting in personal injuries in violation of section 11—401(b) of the Illinois Vehicle Code (Ill. Rev. Stat. 1977, ch. 95½ , par. 11—401(b)). He was sentenced to two concurrent terms of 1 to 3 years' imprisonment. This appeal followed. We affirm.

In the late evening hours of October 21, 1977, on North 33rd Street in Mattoon, two young women riding in a Volkswagen were killed when their Volkswagen was struck in the rear by a 1973 Lincoln. Testimony and pathological reports showed that neither was under the influence of drugs nor alcohol, and that the Volkswagen was in good operating condition.

An occurrence witness, Adams, testified that she was southbound on North 33rd Street at the time of the incident. The street was a two-lane, paved road. She first observed four sets of headlights in the northbound lane and then some sparks, which led to her belief that the second car in the line had been struck by the third one. The second car appeared to be spinning and on fire. The impact occurred on the east side (northbound) of the road; the second car "shot off into the field" on the east side of the road.

Adams arrived at the scene about one minute later and observed a Volkswagen in the field about 30 feet from the road, with a large car resting against its rear end. A station wagon was stopped on the east side of the road facing north and soon afterwards another car arrived from the north and parked on the west side of the road. Some men on the passenger side of the large car were attempting to assist someone named Frank out of the large car. Someone from the car on the west side of the road began running toward the wreck calling to Frank. Adams repeatedly asked the men if they wanted an ambulance and they yelled no. She then went on into town and reported the accident.

Several law enforcement officers and the coroner testified for the State. They found no one in the Lincoln which was imbedded in the rear of the Volkswagen but they did find beer cans, a bottle of liquor and a can of 7-Up, on the passenger side of the automobile. A strong odor of alcohol emanated from the car. One of them measured 275 feet of skid marks on the road from their beginning to the point at which they left the road; 100 feet of these marks were in the northbound lane. The posted speed limit in the area was 55 mph.

The coroner testified that he found two young women dead in the Volkswagen. He also examined the vehicle and found that the rear seat

was broken loose from the frame of the car and that the mountings for the front seat had likewise broken. He, too, found beer cans, a liquor bottle and a 7-Up can in the same place in the Lincoln, together with the strong odor of alcohol.

One of the law enforcement officers interviewed the defendant on the night of the incident. Defendant denied driving the Lincoln, claimed he remembered nothing of the accident and further claimed he was in the back seat when the accident occurred.

Three witnesses who were involved in the events leading up to the accident, and in the accident itself, testified for the State. They were Larry Graham, Rick Ruegger and Patrick Scott. While some difference in detail and in recollection occurs in the course of their testimony, the general outline remains the same. In summary, it is as follows:

Defendant ran a garage and Graham, Ruegger and Scott, together with Frank Hale, were all present at the garage on the evening of October 21 working on their cars. Graham owned a Chrysler, Scott an Oldsmobile and Hale the Lincoln. Defendant was working on Hale's Lincoln. In the course of the evening, Graham and Ruegger went to a liquor store and obtained beer and liquor. All of them were drinking at the garage but opinions differed as to the extent of anyone's intoxication, if any. Scott testified that defendant was intoxicated when they left the garage.

A discussion started concerning the speeds of the Chrysler and the Oldsmobile and eventually Graham and Scott agreed to drag race with their cars. Scott testified that defendant offered a bet on Graham. All parties left the garage, Graham in his Chrysler with defendant's son as a passenger, Scott in his Oldsmobile and defendant, Hale and Ruegger in Hale's Lincoln with defendant driving.

All cars proceeded to North 33rd Street. Graham in his Chrysler pulled into the left (southbound) lane and Scott, in his Oldsmobile remained in the right (northbound) lane, with the Lincoln following Scott. The Chrysler and the Oldsmobile then drag raced for about a quarter of a mile at speeds of 55 to 60 mph. Scott in the right lane won the race and Graham in the left lane slowed down and re-entered the right lane behind Scott. All agreed that the Lincoln did not participate in the race and was following the other vehicles.

Hale in the Lincoln then wanted to see how fast his car would go, so defendant pulled into the left lane and accelerated and passed both Graham and Scott. Opinions as to its speed and location differed somewhat. Scott and Ruegger said that it passed on the left, Graham that it passed on the right; Graham estimated its speed at 60 mph; Scott testified that it "flew." All agreed that it then struck the Volkswagen which none had seen theretofore.

Following the impact and when the vehicles had come to rest in the

field, Graham went over to them and opened the left door of the Lincoln. He testified that defendant fell out of this door; that Hale was under the dashboard in the front; that Ruegger climbed over the front seat and left the car through the left rear door. Graham then took Ruegger, Hale and Scott, who had arrived in the meanwhile, to a hospital. No one testified as to how defendant left the scene, only that they saw him there immediately following the crash.

According to their testimony, both Scott and Ruegger were on parole at the time of the accident and each knew that he should not associate with the other. Ruegger's parole had not been revoked and he denied that there was any agreement on this subject in return for his testimony. He likewise denied he had been offered any reward for the testimony.

Scott pleaded guilty to drag racing in return for his testimony. He paid $30 in costs, lost his driver's license and spent six weekends in jail. He denied any agreement with the State, but believed his parole would not be revoked. He claimed his testimony was truthful and not concocted as part of an agreement.

Such is a summary of the evidence relating to the reckless homicide charges. Further facts as needed for clarity will be set forth later in this opinion. As to the other charge of failing to report an accident resulting in personal injuries, testimony was received from the sheriff of Coles County and the assistant chief of Mattoon police. Each testified that he was the keeper of the records of the respective departments. Objection was sustained to their statements that defendant had made no report of the accident. However, each testified without objection that no such report was found in the files of their departments.

Defendant has raised a variety of issues on appeal. We deal with each of these separately and *seriatim.*

I

■■ Defendant argues that the counts in the information relating to reckless homicide are defective because they fail to allege the requisite mental state and at most charge only negligent conduct. He points specifically to the language alleging that he re-entered the northbound lane of traffic "without first ascertaining whether such movement could be made * * *" safely. We do not agree.

Both counts allege that defendant operated a motor vehicle recklessly and caused the deaths of the young women, naming the specific time and place. This is sufficient to charge the offense. (*People v. Callaham* (1978), 60 Ill. App. 3d 1020, 377 N.E.2d 171.) The quoted language merely gives the defendant further detail and is neither required nor part of the elements of the offense. *People v. Clark* (1977), 55 Ill. App. 3d 496, 371 N.E.2d 33.

## II

Defendant contends that he should have had a change of venue based upon subconscious prejudice of the inhabitants of the county. A pretrial motion to this effect was filed by defendant, and the trial court took it under advisement pending developments at the *voir dire* process. The motion was renewed at the close of *voir dire* and then denied.

Motions for change of venue based on prejudice of the inhabitants are always most troublesome for both court and counsel. No sure way of ascertaining the collective mind of the community has ever been devised. The *voir dire* itself is undoubtedly the best test because it is the attitude of the veniremen themselves at a specific trial which is the ultimate fact. A small number of cases, *e.g.*, mass murders, may lend themselves to something approaching a *per se* rule.

In the small-to-medium-sized communities it will probably be impossible to obtain a full panel of veniremen who are totally ignorant concerning the case, or in a state of obliviousness about it, but the law does not demand so stringent a standard. All that either side is entitled to in any lawsuit is a jury composed of persons who have sworn on their oaths that they can lay aside anything that they might have learned about the case from whatever source together with any opinions they may have formed and judge the case solely on the facts produced in open court and on the law given them by the trial judge. *People v. Williams* (1968), 40 Ill. 2d 522, 240 N.E.2d 645.

The allowance, or denial, of the motion is within the sound discretion of the trial judge. (*People v. Peters* (1975), 33 Ill. App. 3d 284, 337 N.E.2d 716.) In this case there is no basis for disturbing his ruling. All veniremen who could not meet the qualifications described above were released; the articles attached in support of the motion were all factual and not inflammatory; with the exception of one relating to a civil suit filed against defendant, they were all published more than seven months before trial and only one venireman had read the article about the civil action.

Defendant nevertheless argues that there was some subconscious prejudice present in the community. He offers no proof of this proposition and, given the general difficulty of establishing even conscious prejudice, we are dubious that any subconscious variety is susceptible of proof. Venue motions cannot be handled on the basis of speculation, guess or conjecture.

The record in this case discloses an extended and careful *voir dire* examination, and the total background of the case did not present nearly so severe a situation as existed in other cases wherein change of venue motions were likewise denied and affirmed on appeal. Compare *People v. Driver* (1978), 60 Ill. App. 3d 381, 376 N.E.2d 803; *People v. Gendron* (1968), 41 Ill. 2d 351, 243 N.E.2d 208; and *Williams*.

Lastly, we deem it significant that defendant, having exhausted his peremptory challenges, did not request any additional peremptory challenges.

## III

Defendant next raises a most serious issue, that of attempting to impeach the jury's verdicts on account of juror misconduct. Impeachment of verdict strikes at the very heart of our legal system, and while it is not unknown, yet it will be allowed only for the most grave and compelling reasons.

The issue arose in this manner: the jury retired to deliberate at about 4 p.m., and at about 8 p.m. announced that it had reached verdicts. All parties assembled shortly thereafter to receive the verdicts. Immediately after the court had accepted the verdicts of guilty on all charges, defense counsel approached the bench and asked to put certain matters in the record. He stated that he had just received information that one of the jurors, Hopper by name, had been employed in the same company as the witness Patrick Scott and Frank Hale, who owned the Lincoln but who was not called to testify.

These matters were amplified by affidavits attached to defendant's motion for new trial. One of them, a third-party affidavit, stated that Hopper and Scott had been employed in the same department of the company from June 30, 1977, to August 3, 1977, and that the affiant had seen them frequently in conversation with one another during that time. A further third-party affidavit from an executive of the company confirmed the dates. Hale's affidavit likewise stated that he had observed such conversations between Hopper and Scott and that on one occasion Hopper had stated to him, "You and Chuck should be hung for killing them girls."

Hopper's counteraffidavit was filed in which he denied any acquaintance with Hale and denied any such statement to him. He further stated that he might have spoken with Scott, but only on company matters and knew him only as a fellow employee. He further averred that on *voir dire* he did not recognize the names of Patrick Scott and Francis Hale and that his *voir dire* answers were truthful.

The trial court considered the issue carefully and found that Hopper was probably not correct in stating that he did not know Scott, but found further that Hopper's affidavit resolved any discrepancy. The trial court also found that Hopper did make the statement attributed to him, but that it was not inconsistent with his *voir dire* since he may have forgotten it. The court found ultimately that there had been no demonstration of actual prejudice since Hopper had stated specifically on *voir dire* that he would consider the case solely on the facts produced in open court.

While neither we, nor the trial court, have elected to decide the issue on the basis of timeliness, yet we find it curious that such a wealth of information could be generated in such a short time. We find it even more curious as to why counsel waited until after the verdicts were read to present it. The time sequence makes it obvious that counsel was in possession of the purported new information at least a few seconds before the verdicts were announced. Ample opportunity existed to move with dispatch for a recess or a sidebar conference before the court called for the verdicts.

■■ All of the authorities on this issue hold that the allowance, or denial, of a new trial based on juror misconduct lie within the sound discretion of the trial judge who had a superior opportunity to observe the juror during *voir dire*. In the absence of clear abuse, that discretion will not be disturbed on appeal. *People v. Cole* (1973), 54 Ill. 2d 401, 298 N.E.2d 705; *People v. Chatman* (1977), 49 Ill. App. 3d 1034, 364 N.E.2d 739; *People v. Gold* (1967), 38 Ill. 2d 510, 232 N.E.2d 702; *People v. Tillman* (1969), 116 Ill. App. 2d 24, 253 N.E.2d 873.

The third-party affidavits disclose that Hopper and Scott were in the same department up to August 3, 1977; the accident did not occur until October 21, 1977; conversation about the accident would therefore have been impossible. The record further discloses that 30 to 35 persons worked in that department. Since Scott and Hopper were there together only slightly more than one month and the trial took place almost a year later, it is not inconceivable that Hopper simply did not recognize Scott's name when it was read to him.

The affidavits contain no information as to when and under what circumstances Hopper's purported statement to Hale was made. We have, moreover, a categorical denial by Hopper. It was therefore incumbent on the trial court to weigh the conflicting statements and to reconcile any discrepancy. He did this adversely to the defendant, and we cannot say as a matter of law that it was either an abuse of discretion, nor against the manifest weight of the evidence.

## IV

Defendant's fourth issue relates to the testimony of Patrick Scott. The trial court had ordered the separation of witnesses. Before Scott took the stand defendant moved to exclude his testimony since he had violated the order by talking at recess with the witness Ruegger who had just completed testifying.

The trial court held a hearing outside of the presence of the jury and determined that the conversation was about some socializing between Ruegger and Scott during the previous week. The court found that the conversation did not occur intentionally, or deliberately, and there was

some question as to whether Scott even knew of the separation order. The court denied the motion and offered to allow defense counsel to interrogate Scott about the conversation before the jury.

■■ Such a matter is within the sound discretion of the trial court and will not be disturbed in the absence of manifest abuse. (*People v. Nelson* (1965), 33 Ill. 2d 48, 210 N.E.2d 212.) We find no such abuse here, especially in view of the trial court's offer.

## V

Defendant's next contention concerns a statement by the trial judge in ruling on a defense objection during the prosecutor's closing argument. The prosecutor argued that Graham had testified that the Lincoln had passed both his car and Scott's car. Objection was made that this was not the evidence, and a review of Graham's testimony reveals that it was not. The court stated in overruling the objection that he believed the prosecutor was correct, but that the jury had heard the testimony and could recall it. In ruling on defendant's motion for new trial the court stated that he probably was mistaken in his recollection, but that the error was not sufficient to be the basis of a new trial. We agree.

■■ One of the most difficult tasks for a trial judge is to exercise instant and total recall when asked to rule upon such an objection during final arguments, particularly at the end of a long and arduous trial. An inadvertent error, or momentary lapse of memory, will not require a new trial.

Cases in which a new trial has been granted based upon a judge's remarks involve blatant hostility and bias on the part of the judge, as in *People v. Tyner* (1964), 30 Ill. 2d 101, 195 N.E.2d 675, wherein the judge openly accused a witness of lying and made a statement with heavy racial overtones.

■■ Where the error is unintentional and where the cautionary instruction (Illinois Pattern Jury Instructions, Criminal, No. 1.01(8) (1968)) is given, the error is rendered harmless. *People v. Parra* (1975), 35 Ill. App. 3d 240, 340 N.E.2d 363; *People v. Beasley* (1977), 54 Ill. App. 3d 109, 359 N.E.2d 260.

The instruction was given in this case and the error became harmless. Nothing appears to lead to the conclusion that the jury disregarded the instruction.

## VI

■■ Defendant's sixth issue deals with instructions to the jury on the elements of reckless homicide. The State tendered and the trial court accepted Illinois Pattern Jury Instructions, Criminal, defining the offense of reckless homicide and enumerating the elements thereof. The

defendant tendered instructions, non-IPI, which included many more elements by designating each fact alleged in the information as an element. The trial court refused defendant's instructions on this point. His action was proper.

Supreme Court Rule 451(a) (Ill. Rev. Stat. 1977, ch. 110A, par. 451(a)) requires that IPI Criminal instructions be used unless the court determines that such instructions do not accurately state the law. We have already held under paragraph I in this opinion that the factual matters in the informations were not part of the offense.

The State's instructions were verbatim from IPI Criminal and were proper. The defendant's instructions were improper and the trial court correctly refused them.

### VII

Defendant's penultimate complaint is that he was not proved guilty beyond a reasonable doubt of either reckless homicide or failure to report. We disagree.

As to the reckless homicide charges, there was evidence from which a jury could conclude that defendant was driving the Lincoln, even though he strenuously denied it, that he had been drinking heavily and that the Lincoln was being operated at an excessive rate of speed. We need not reiterate all of the evidence detailed above. The authorities hold that the combination of the conduct detailed will support a determination of recklessness. Compare *People v. Luttmer* (1977), 48 Ill. App. 3d 303, 362 N.E.2d 1093; *People v. Clark* (1970), 130 Ill. App. 2d 558, 265 N.E.2d 191, *rev'd on other grounds* (1972), 50 Ill. 2d 292, 278 N.E.2d 782; *People v. Callaham* (1978), 60 Ill. App. 3d 1020, 377 N.E.2d 171.

*People v. Gray* (1972), 7 Ill. App. 3d 526, 288 N.E.2d 26, closely resembles the instant case. In *Gray*, the evidence indicated that the defendant had been drinking heavily and that he did not see the deceased's motorcycle when he should have seen it and failed to respond in an appropriate manner. The conviction of reckless homicide was affirmed.

As to the failure-to-report charge, it is our view that there was sufficient circumstantial evidence for a jury to find the defendant guilty. The trial court would not let the officers testify that defendant had not made a report, but they did testify without objection that no such report appeared in their files. Furthermore, one of the deputies who made an investigation at the scene on the night of the accident interviewed the defendant later on the same night. He testified that defendant admitted to him that he had departed the scene immediately after the accident. Defendant did not testify in this case. There is a sufficient basis to infer defendant's guilt beyond a reasonable doubt.

## VIII

Defendant's final contention is that the trial court erred in striking an affidavit and denying a new trial on the basis of newly discovered evidence.

The matter arose in the following manner: attached to his motion for new trial by defendant was an affidavit by one Richard Ard, who stated that after the trial was over he had a conversation with an unnamed person other than the defendant who was riding in the Lincoln and that this unnamed person told him that defendant was not the driver of the Lincoln at the time of the accident. Counteraffidavits were filed by the State. They were made by Ruegger and Hale, the other occupants of the Lincoln. Ruegger denied ever speaking with Ard, and Hale corroborated the testimony of Scott and Ruegger that defendant was the driver. The trial court held a hearing at which Ard testified and claimed that his conversation was with Hale. As indicated above, the trial court struck Ard's affidavit and denied the motion. The action was correct.

Newly discovered evidence is not favored in the law. The matter is best summed up in *People v. Seidel* (1975), 33 Ill. App. 3d 901, 903, 338 N.E.2d 567, 569, where the court said:

> "To warrant a new trial, the new evidence must be of such a conclusive character that it will probably change the result on retrial; it must be material to the issue and not merely cumulative; and it must have been discovered since the trial and be of such a character that it could not have been discovered prior to the trial by the exercise of due diligence. (*People v. Baker*, 16 Ill. 2d 364, 158 N.E.2d 1; *People v. Hughes*, 11 Ill. App. 3d 224, 296 N.E.2d 643.) Applications for a new trial on the ground of newly discovered evidence are not looked upon with favor by the courts. In order to prevent, so far as possible, fraud and imposition which defeated parties may be tempted to practice, as a last resort, to escape the consequence of an adverse verdict, such application should always be subjected to the closest scrutiny by the court. *People v. Holtzman*, 1 Ill. 2d 562, 116 N.E.2d 338."

The purported evidence in the instant case was purely hearsay and, if not, was contradicted by the counteraffidavits and by Ruegger's and Scott's testimony at trial; at most it was only cumulative to Graham's testimony that defendant fell out of the back seat when Graham reached the wreck. There is no basis for believing that it could change the outcome of the trial, even assuming that it could be admitted.

Nor has defendant demonstrated any diligence in connection with the evidence. Defendant's motion stated only that Ard had "just come forward." *People v. Simpkins* (1978), 62 Ill. App. 3d 758, 379 N.E.2d 391.

Lastly, the hearing showed that Ard was a former employee of defendant. His late wisdom is extremely suspect.

We resolve all of the foregoing issues against the defendant and affirm the verdict and judgment of the circuit court of Coles County.

Affirmed.

TRAPP and GREEN, JJ., concur.