141 Ill. App.3d 1018 (1986)
491 N.E.2d 44
In re C.P., a Minor (The People of the State of Illinois, Petitioner-Appellee,
v.
C.P., Respondent-Appellant).
No. 85-1431.
Illinois Appellate Court  First District (1st Division).
Opinion filed March 10, 1986.
James J. Doherty, Public Defender, of Chicago (Thomas N. Swital, Assistant Public Defender, of counsel), for appellant.
*1019 Richard M. Daley, State's Attorney, of Chicago (Joan S. Cherry, Christopher J. Cummings, and Michael J. Marovich, Assistant State's Attorneys, of counsel), for the People.
Judgment affirmed.
PRESIDING JUSTICE BUCKLEY delivered the opinion of the court:
The circuit court of Cook County found the minor respondent delinquent based on the offense of voluntary manslaughter. (Ill. Rev. Stat. 1983, ch. 38, par. 9-2(b).) After a dispositional hearing, he was committed to the Juvenile Division of the Department of Corrections. On appeal, he contends that the trial court abused its discretion and denied him a fair trial when it refused to enforce defense counsel's motion to exclude witnesses and that the State failed to prove beyond a reasonable doubt that he was not acting in self-defense.
The testimony of Dennis Griffin, Elmer Dunn, Marlon Stamps and Burnell Griffin, all of whom were students at Orr High School, was substantially similar. Dennis Griffin testified that at approximately 7:45 a.m. on February 17, 1984, he and his brother Burnell proceeded from their residence located near La Follette Park on the northwest side of Chicago to board the bus for school. Dennis then saw the respondent about eight feet away within the park carrying a small handgun under his belt in the front of his pants. Dennis continued toward the bus stop, where he encountered Dunn, Stamps and the victim and told them that respondent was in the park with a gun. The victim then "jogged" to the park followed by Dunn, Stamps, and the Griffins. When they reached the basketball court, respondent was there with two other male youths. The victim then walked to within three feet of respondent, who carried the gun under his belt. The two exchanged words as the Griffins, Stamps and Dunn stood no closer than five feet away. Next, respondent removed the gun from his belt and struck at the unarmed victim with the weapon. The victim in turn punched at the respondent with his fist. In response, respondent fired the gun at the ground. When the victim hollered, "It's a cap gun," respondent aimed the weapon at the victim's chest, fired it and waved the gun in the air asking, "Who else wants some?" After the second shot, the victim ran across the street and was followed by the Griffins and Dunn. Dennis Griffin tried to assist the victim who was bleeding from his chest and nose as he collapsed while leaning on a car. Thereafter a policeman and ambulance arrived.
Elmer Dunn added that when Dennis Griffin told him, Marlon Stamps and the victim that respondent was in the park with a gun, *1020 Dunn tried to persuade the victim to proceed to school. Dunn also stated that after the shooting he sought assistance for the victim from passing motorists and a neighbor.
Marlon Stamps stated that after the victim was shot and fled from the scene with Elmer Dunn and the Griffins, respondent asked did he "want some." Stamps replied that he did not know anything about the incident, then ran after the other youths.
Burnell Griffin added that respondent's weapon resembled a toy gun and that he did not realize that it was a real gun until the victim was shot.
Michael Mayfield, a paramedic, testified that when he and his partner, John Enright, arrived at the scene at about 8 a.m. on February 17, 1984, they placed the victim on a stretcher and completed a survey of his body to determine the extent of his injuries. During the survey they touched all parts of his body, opened his shirt, examined the bullet wound underneath the nipple on the right side of his chest and visually inspected his person, but they found no weapons.
Officer Lombardi testified that he responded to the scene after receiving a radio simulcast of a battery in La Follette Park. He observed the victim lying in the mouth of an alley located on Hirsch Street near Laramie. Officer Lombardi called an ambulance and searched the victim and the area for weapons, but found none. According to the officer, when he spoke to Elmer Dunn, Marlon Stamps and Burnell Griffin, he was told that respondent shot the victim and that he was with two brothers named Hill.
Dr. Hans E. Dolz, a pathologist at the Cook County medical examiner's office, testified that according to the autopsy he performed, the victim died from a gunshot wound to the chest.
Detective Troy Sanford testified that on February 17, 1984, he conducted an investigation regarding the circumstances of the victim's death. When Sanford spoke to Elmer Dunn, the latter stated that the victim became angry when he learned that respondent was carrying a gun in the park.
Respondent testified that he was 13 years of age on February 17, 1984, when he stopped to play basketball in La Follette Park while he was on his way to school. He then wore a black corduroy cap tilted to the side of his head. According to respondent, the style in which the cap was worn symbolized that he was a member of the Disciples street gang, which he joined at age 12. Respondent carried a handgun that day because he was threatened the day before by "Lester" and "Larry," two members of the Vice Lords street gang.
While respondent played basketball, he saw Dennis Griffin running *1021 toward the court. Respondent then removed a small handgun from his book bag and placed it under his belt. When Dennis arrived at the court, he asked respondent why he wore his hat as he did. Respondent answered, "Was it any of his business?" Dennis replied that it was the Vice Lords' "turf" and that he knew the time when respondent left his house. Thereafter, Dennis walked away and respondent resumed playing basketball with the Hill brothers and two other youths.
Next, Dennis Griffin returned with the victim, Marlon Stamps, Elmer Dunn and Burnell Griffin. The victim dropped his book bag by the basketball court and approached respondent with Dunn and Burnell at his side; Griffin remained behind them, and Stamps moved to the side. The victim then questioned respondent about his hat, to which respondent replied, "Was it any of his business?" When respondent attempted to punch the victim, the latter in turn struck at the respondent who in response removed the gun from his belt and fired a warning shot. The victim then removed a lock-blade[1] knife from his pocket and said, "Let's smash this donut."[2] Respondent added that he did not know what happened to the knife.
Respondent also stated that sometime after he had fought a member of the Vice Lords in October 1983, the victim, who was armed with a baseball bat, and Dennis Griffin had threatened him while he was in La Follette Park with his brother Andrew and their friend, Robert Collins. Andrew and Collins had come to the bus stop to meet respondent and escort him safely home.
Respondent's brother Andrew testified that he attends Hyde Park Career Academy. In October 1983, he and Robert Collins carried baseball bats as they walked to the bus stop to meet respondent and escort him home. When Andrew saw respondent deboard the bus, he signalled to respondent to follow. While respondent, Andrew and Collins proceeded toward their residence, five other young men, including Dennis Griffin and the victim, walked behind them. Two of those youths also had baseball bats. The victim attempted to fight respondent, but Andrew interceded and sent respondent home to get their mother. Andrew did not see the victim again until Halloween, when they all participated in a friendly egg fight.
 1 Now we shall consider respondent's contention that the trial *1022 court abused its discretion and denied him a fair trial when it refused to enforce his motion to exclude witnesses. It is within the discretion of the trial court to grant motions to exclude witnesses from the courtroom (People v. Bodeman (1982), 105 Ill. App.3d 39, 43, 433 N.E.2d 1140) and to separate them so as to prevent their discussion of trial testimony (People v. Farris (1980), 82 Ill. App.3d 147, 154-55, 402 N.E.2d 629). Absent a manifest abuse of that discretion, the decision of the trial court will not be disturbed on review. People v. Dixon (1961), 23 Ill.2d 136, 140, 177 N.E.2d 206.
 2 Our review of the record reveals that the trial court granted the motion made by the State and defense to exclude witnesses who were to testify. Thereafter, prior to a recess which occurred during the course of Dennis Griffin's testimony, defense counsel requested that a separation order be entered instructing Griffin to refrain from communicating with other witnesses regarding his testimony. The court then ordered Griffin to remain on the witness stand to prevent his having contact with other witnesses. Subsequently, after Griffin completed his testimony, defense counsel requested that the trial judge again instruct Griffin to refrain from discussing his testimony with other witnesses. However, the trial court refused on the basis that counsel was unable to support his request with legal authority. Although we believe that the decision of the trial court was improper because it was within its discretion to grant such a motion, we believe that the error was harmless. Respondent had the opportunity to examine the State's witnesses to determine if they acted in concert to present the same testimony. Yet, respondent failed to do so. Under the circumstances we cannot conclude that respondent's contention has merit. See People v. Farris (1980), 82 Ill. App.3d 147, 402 N.E.2d 629.
 3 Next, respondent asserts that the State failed to prove beyond a reasonable doubt that he was not acting in self-defense. The Criminal Code provides that an individual "is justified in the use of force which is intended or likely to cause death or great bodily harm only if he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or another." (Ill. Rev. Stat. 1983, ch. 38, par. 7-1.) Whether an otherwise criminal act is justified under the law of self-defense depends on all of the surrounding facts and circumstances. (People v. Evans (1982), 104 Ill. App.3d 598, 601, 432 N.E.2d 1285.) The difference between a justified killing under self-defense and one that is not justified, amounting to voluntary manslaughter, is that in the former instance the belief that the use of force is necessary is reasonable under the circumstances, and *1023 in the latter the belief is unreasonable. (People v. Ellis (1982), 107 Ill. App.3d 603, 611, 437 N.E.2d 409.) The trier of fact is not required to believe an accused's exculpatory testimony. (People v. Zolidis (1983), 115 Ill. App.3d 669, 674, 450 N.E.2d 1290.) In a bench trial, it is the province of the trial court to determine the credibility of the witnesses and weigh the evidence. Its determination will not be set aside on review unless the proof of guilt is so unsatisfactory as to create a reasonable doubt as to defendant's guilt. People v. Cook (1984), 129 Ill. App.3d 531, 472 N.E.2d 856.
 4 The instant record reveals that while respondent carried a small handgun in his belt and played basketball in a public park on the northwest side of the city, the victim and four other youths arrived. The victim orally confronted respondent, then each of them attempted to strike the other. Thereafter, respondent removed the weapon from his belt and fired it at the ground, but the victim derided respondent's action. Next, according to respondent the victim pulled out a lock-blade knife. Respondent failed to testify that the victim opened the knife or threatened him with it, or that the victim's companions approached him. Nevertheless, respondent aimed the weapon at the victim and shot him in the chest. Under the circumstances the trial court could have properly concluded that respondent shot the victim without a reasonable belief that such action was necessary to prevent imminent death or great bodily harm to himself or another.
Accordingly, the judgment of the circuit court of Cook County is affirmed.
Judgment affirmed.
CAMPBELL and O'CONNOR, JJ., concur.
NOTES
[1] According to respondent a lock-blade knife is one which must be opened with two hands.
[2] According to respondent, "donut" is a name for members of the Disciples street gang.