PATRICK HOCKETT *et al.*, Plaintiffs-Appellants, v. JOHN K. DAWDY *et al.*, Defendants-Appellees.

Fifth District   No. 5—87—0600

Opinion filed March 2, 1989.

Richard Shaikewitz, of Wiseman, Shaikewitz, McGivern, Wahl, Flavin & Hesi, P.C., of Alton, for appellants.

Richard F. Record, Jr., of Craig & Craig, of Mattoon, for appellees.

PRESIDING JUSTICE WELCH delivered the opinion of the court:

This is an appeal by plaintiffs from a judgment in favor of defendants entered April 27, 1987, upon a verdict in the circuit court of Bond County. The issues raised on appeal are: (1) whether the trial court erred in denying plaintiffs' motion for change of venue; and (2) whether the trial court erred in denying plaintiffs' motion to set aside the verdict and grant a new trial.

In a lawsuit filed October 18, 1984, plaintiffs alleged that medical malpractice by defendants increased the severity of plaintiff Patrick Hockett's condition (a brain tumor) and diminished the likelihood of successful treatment. Plaintiff Patrick Hockett's father was named as a party plaintiff due to Patrick's minor status at the time the complaint was filed. A jury trial began on April 20, 1987.

On the first day of trial, plaintiffs presented an oral motion for change of venue, alleging that they could not receive a fair trial in Bond County. In support of their motion, plaintiffs contended that defendant John Dawdy is known by many of the potential jurors in the county and that five of eight physicians practicing full time in the area were currently employed by defendant McCracken-Dawdy Family Practice Center. Further, one of the physicians employed at McCracken-Dawdy Family Practice Center was also a member of the board of directors at Utlaut Hospital, one of the largest employers in Bond County. According to plaintiffs, these factors made it unlikely that they would receive a trial by a fair and impartial jury in Bond County. The trial court deferred ruling on plaintiffs' motion for a change of venue until after *voir dire*.

During *voir dire*, plaintiffs exercised six of the eight peremptory challenges allowed them. Additionally, approximately 24 potential jurors were excused for cause. Upon obtaining a panel of 12 jurors who stated individually an ability to decide the case free from bias or prejudice in favor of or against either plaintiffs or defendants, plaintiffs declined any additional challenges and accepted the jury. At that time, the trial court denied plaintiffs' motion for a change of venue.

After hearing the evidence, arguments and instructions, the jury deliberated approximately six hours before returning a verdict in favor of defendants. At plaintiffs' request, the jury was polled individually by the trial court and each juror confirmed the verdict. The trial court entered judgment on the verdict.

Subsequent to trial, Samuel Mormino, Jr., swore to an affidavit

which stated that he personally contacted 5 of the 12 jurors who had served on the jury in the instant case and learned the following:

"A. That several jurors said during deliberations, 'If we find against the doctors, we won't have any doctors left in the county.' That this was reportedly said by four of five of the jurors during the deliberations.

B. That one of the jurors used Dr. Dawdy as her personal physician.

C. That Foreman Dan Hinkle raised his voice to Donna Krummel one of the jurors in favor of the plaintiff and frightened her and scared her.

D. That the jurors felt that Jack Hockett looked like a bum and that Kelly Hockett had bad grades in school and that some of the jurors felt that they shouldn't win for that reason.

E. That it was discussed in the jury room that all of the jurors liked Dr. Dawdy and did not want to hurt him.

F. Further, that at least one of the jurors stated that Dr. Dawdy was liked in the County very much and she felt there was no way that the Hocketts could get a fair trial in Bond County."

The affidavit containing the above information was attached to plaintiffs' motion for a new trial. On June 12, 1987, the trial court conducted a hearing on plaintiffs' motion for a new trial. At plaintiffs' request, one of the jurors from the trial of the instant case testified at the post-trial hearing. On July 21, 1987, an order was entered denying plaintiffs' post-trial motion to set aside the verdict and for a new trial.

■■ ■ The first issue we are asked to consider is whether plaintiffs' motion for a change of venue was properly denied. A change of venue in a civil action may be had when any party or his attorney fears that a fair trial will not be received in the court in which the action is pending, because the inhabitants of the county are prejudiced against one or more of the parties or their attorney, or the adverse party has an undue influence over the minds of the inhabitants. (Ill. Rev. Stat. 1987, ch. 110, par. 2—1001.) In any such situation the venue shall not be changed except upon application or by consent of the parties. (Ill. Rev. Stat. 1987, ch. 110, par. 2—1001(a)(2).) Every application for a change of venue shall be by petition, setting forth the cause of the application and praying for a change of venue, which petition shall be verified by the affidavit of the applicant. (Ill. Rev. Stat. 1987, ch. 110, par. 2—1001(c).) If the cause for the change is the prejudice of the inhabitants of the county or the undue influence of

the adverse party over their minds, the petition shall set forth the facts upon which the petitioner bases his or her belief and must be supported by the affidavits of at least two other reputable persons residing in the county. (Ill. Rev. Stat. 1987, ch. 110, par. 2—1001(d).) Further, where the basis of a petition for change of venue is the alleged prejudice of inhabitants of the county or the undue influence of the adverse party over their minds, the granting or denial of such petition rests in the discretion of the trial court, and a trial court's decision should not be disturbed unless there is an abuse of discretion. *Central Illinois Public Service Co. v. Westervelt* (1976), 35 Ill. App. 3d 777, 779, 342 N.E.2d 463, 465; see Ill. Rev. Stat. 1987, ch. 110, par. 2—1001(d).

■ In the instant case, plaintiffs presented their motion for change of venue orally on the first day of trial. They did not comply with the statutory requirement that such a motion be presented by petition with supporting affidavits. (Ill. Rev. Stat. 1987, ch. 110, pars. 2—1001(c), (d).) The failure to submit a written petition may be considered as a basis for denial of a motion for change of venue. (*Peck v. Rockford Life Insurance Co.* (1973), 9 Ill. App. 3d 568, 292 N.E.2d 528.) Similarly, the failure to support the petition with two affidavits has been held sufficient to defeat an application for change of venue. (*Schostak v. Vlahakis* (1971), 133 Ill. App. 2d 690, 274 N.E.2d 655; *Concerned Citizens For McHenry, Inc. v. City of McHenry* (1979), 76 Ill. App. 3d 798, 395 N.E.2d 944.) The insufficiencies of plaintiffs' motion notwithstanding, the trial court gave full consideration to plaintiffs' request for a change of venue.

■ While we are aware that it would be within our power to affirm the trial court's denial of plaintiffs' oral request for a change of venue for failure to comply with the above-stated statutory requirements—as a lower court judgment may be sustained upon any ground warranted in the record regardless of whether it was relied on by the trial court (*Alexander v. DePaepe* (1986), 148 Ill. App. 3d 831, 499 N.E.2d 1065)—we choose to give plaintiffs full consideration of their claim, as did the trial court.

Instead of denying plaintiffs' oral motion for a change of venue due to the failure to comply with statutory requirements, the trial court expressed great concern for whether it would be possible to select a fair and impartial jury from a venire drawn in Bond County and postponed judgment on plaintiffs' motion until jury selection had at least been attempted. It was the trial court's expressed belief that the best manner for determining whether a fair and impartial jury could be assembled in Bond County would be to undertake the selection of

such a jury. Rather than speculate or hypothesize as to the possibility of selecting a fair and impartial jury, the court considered it appropriate to analyze the prospective jurors on an individual basis, attempting to select 12 jurors satisfactory to the court and counsel. At the outset, the trial court commented that, as a matter of procedure, counsel would be allowed to do "the greatest bulk of the *voir dire*."

■ Under Supreme Court Rule 234 (107 Ill. 2d R. 234) the primary responsibility for initiating and conducting a *voir dire* examination is vested in the trial court, and the trial court has discretion to allow the parties to supplement its examination. The record of the proceedings in the present case indicates that the *voir dire* procedure was very thorough, continuing until the afternoon of the second day of trial. As a result of this thorough examination, many potential jurors were excused for cause and several more were excused peremptorily. In reviewing the trial court's determination that plaintiffs could receive a fair trial in Bond County, it is significant that plaintiffs' counsel did not exhaust all available peremptory challenges in selecting the jury. *People v. Williams* (1968), 40 Ill. 2d 522, 240 N.E.2d 645.

■ The trial court in the present case removed for cause only those potential jurors who were currently under the care of a doctor affiliated with defendant McCracken-Dawdy Family Practice Center. Plaintiffs complain that the trial court should not have limited its removal for cause to potential jurors currently under the care of a physician affiliated with defendant McCracken-Dawdy, and suggest that the court should have removed for cause any juror who had been under defendants' care at any time prior to or during trial. Again, plaintiffs did not exhaust their allotted peremptory challenges, nor did they request additional peremptory challenges to be used in removing potential jurors who, at any time prior to trial, had been treated at McCracken-Dawdy or by one of its affiliated physicians. Our supreme court has held that the failure to challenge a juror for cause or exercise a peremptory challenge waives any objection to that juror. (*Kingston v. Turner* (1987), 115 Ill. 2d 445, 465, 505 N.E.2d 320, 329.) Finally, once the jury and alternates had been selected, the court denied plaintiffs' motion for a change of venue, stating its recognition that the *voir dire* procedure had resulted in the obtainment of a jury satisfactory to counsel. We are unable to find that the trial court abused its discretion in denying plaintiffs' motion for change of venue, and its ruling will not be disturbed.

The other issue we are asked to consider is whether the trial court erred in failing to grant plaintiffs' motion to have the verdict

set aside and for a new trial. During *voir dire,* jurors were asked whether the fact that five out of eight doctors practicing full time in Bond County were defendants in the underlying law suit would not affect their assessment of the facts and application of law. In their post-trial motion, plaintiffs alleged that approximately nine of the jurors either affirmatively stated or agreed with a statement allegedly made during deliberations to the effect that "if we find against the doctors, we won't have any doctors left in the county." The trial court allowed one of the jurors to testify at the evidentiary hearing on plaintiffs' motion to set aside the verdict. In further support of plaintiffs' motion to set aside the verdict, the affidavit of Samuel Mormino, Jr., the essence of which is enunciated in the facts above, was submitted to the court.

■ Our supreme court has held that a motion for a new trial based on jurors' false testimony during *voir dire* should be denied unless the movant establishes both that a juror answered falsely and that prejudice resulted. (*Pekelder v. Edgewater Automotive Co.* (1977), 68 Ill. 2d 136, 139, 368 N.E.2d 900, 901.) The *Pekelder* court also ruled that the determination of such an issue is primarily left to the discretion of the trial court, which is in the better position to observe the jurors and their demeanor. (68 Ill. 2d at 139, 368 N.E.2d at 901.) Absent a clear abuse, the trial court's discretion will not be disturbed on appeal. *People v. Hunt* (1983), 112 Ill. App. 3d 138, 445 N.E.2d 408.

■ ■ As a general rule, courts will not receive the affidavits or testimony of jurors who rendered a verdict for the purpose of impeaching the verdict. (*People v. Tobe* (1971), 49 Ill. 2d 538, 543, 276 N.E.2d 294, 298.) An exception to this rule arises when it is charged that a juror has answered falsely on *voir dire* about a matter of potential bias or prejudice. (*Department of Public Works & Buildings v. Christensen* (1962), 25 Ill. 2d 273, 279, 184 N.E.2d 884, 887.) In the present case, the affidavit was submitted by a third-party affiant, not a juror. The trial court did not consider this affidavit in making its ruling on plaintiffs' post-trial motion. It appears that the trial court may have disregarded Mormino's affidavit because it was from a third party, or because it was not within the exception stated in *Christensen.* We note that in *People v. Farris* (1980), 82 Ill. App. 3d 147, 402 N.E.2d 629, the court allowed the introduction of a third-party affidavit when considering an attempt to impeach a verdict. However, the third-party affidavits in *Farris* did not contain hearsay. We find it unnecessary to delve further into the reasoning of the trial court as the trial court's decision to disregard Mormino's affidavit was proper and

may be affirmed in the instant case because the information contained in the affidavit is undoubtedly hearsay. See *People v. Carpenter* (1963), 28 Ill. 2d 116, 121, 190 N.E.2d 738, 741.

At the post-trial hearing, the trial court did consider testimony from one of the jurors. Our disposition, then, turns on whether, in considering the evidence presented at the post-trial hearing, in addition to other matters of record, the trial court abused its discretion in determining that plaintiffs failed to satisfy the two-part standard stated in *Pekelder*. In the instant case, we are unable to find that plaintiffs satisfied the requirements stated in *Pekelder*, and therefore, the trial court did not abuse its discretion in denying plaintiffs' motion for a new trial.

█ It has been recognized that the actual effect of outside influences on the minds of the jury cannot be proved. (*People v. Holmes* (1978), 69 Ill. 2d 507, 514, 372 N.E.2d 656, 659.) In fact, evidence relating to the effect of such influences on the mental processes of jurors has been held inadmissible. (*People v. Pulaski* (1958), 15 Ill. 2d 291, 300, 155 N.E.2d 29, 34.) In determining whether prejudice resulted from outside influences on a jury, our supreme court has held that the standard to be applied is whether the conduct involved such a probability that prejudice will result that it is to be deemed inherently lacking in due process. (*People v. Holmes* (1978), 69 Ill. 2d 507, 513, 372 N.E.2d 656, 659.) In the present case, we are unable to find that due process was lacking.

The trial court had before it the record of the thorough *voir dire* and allowed plaintiffs to call members of the jury to testify at the post-trial hearing. The record of the post-trial proceedings indicates that the juror who testified on behalf of plaintiffs was somewhat unclear, and at times inconsistent and confusing. The essence of what can be gathered from the record of the juror's testimony is that some of the jurors expressed an awareness of the so-called "medical-malpractice crisis" and did not want to scare away medical care. Further, she stated her belief, in somewhat uncertain terms, that the doctor named as a defendant in the underlying suit was a "nice person" against whom the jury did not want to return a verdict.

█ █ It must be remembered that all a party to a suit is entitled to in any lawsuit is a jury composed of persons who have sworn under oath that they can lay aside anything that they might have learned about the case from whatever source together with any opinions they may have formed and judge the case solely on the facts produced in open court and on the law given them by the trial judge. (*People v. Farris* (1980), 82 Ill. App. 3d 147, 152, 402 N.E.2d 629,

633-34.) In the case before us, the fact that jurors may have considered the defendant to be a nice person, or their awareness of a medical-malpractice crisis, does not necessarily lead to the conclusion that the jury could not have found against the defendant if the facts supported such a finding. The trial court heard the testimony presented at the post-trial hearing and participated in the *voir dire* proceedings; therefore, the court was in a better position to judge the credibility of the juror who testified on behalf of plaintiffs. Unable to find that the trial court abused its discretion in denying plaintiffs' post-trial motion, we will not interfere.

For the above reasons, the judgment of the circuit court of Bond County is hereby affirmed.

Affirmed.

HARRISON AND LEWIS, JJ., concur.