THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v* DONALD HUNT, Defendant-Appellant.

First District (5th Division)   No. 80—2937

Opinion filed January 21, 1983.

Steven Clark and Karen Michels, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Raymond Brogan, and Sara Dillery Hynes, Assistant State's Attorneys, of counsel), for the People.

JUSTICE MEJDA delivered the opinion of the court:

Defendant was charged with three counts of murder and one of aggravated battery. Following a jury trial, he was found guilty on all counts and was sentenced to 25 years imprisonment. On appeal, he contends that: (1) the fact that a juror's sister had been the victim of a crime very similar to the one for which defendant stood accused, which was not revealed during the *voir dire* examination, deprived him of his right to a fair trial by an impartial jury; (2) the trial court committed reversible error in refusing to allow testimony by the juror regarding his post-trial consultation with his private attorney during the hearing on a motion for a new trial; and (3) the juror's failure to respond to a *voir dire* question deprived defendant of his statutory right to peremptorily challenge the juror.

There is no contention that guilt was not established beyond a reasonable doubt and, therefore, the following factual summary is confined to those relevant to the issues raised.

The victim, a 15-year-old prostitute, was killed when she leaped from a third-floor window of defendant's apartment. At trial, defendant's signed confession was published to the jury and admitted into evidence. Defendant, a pimp, admitted that he had beaten the victim with a coat hanger and a five-foot-long "couple of inches" thick stick. The beating was inflicted as a punishment for the victim's "loose mouth" and "lolligagging." When the beating was interrupted, the victim broke away and attempted to escape, but she was unable to do so because a front gate was locked. Then, with defendant in pursuit brandishing the stick, the victim fled throughout the various rooms of the apartment, running finally into the dining room. There, defendant saw her standing near the window, stepping onto the window ledge, and jumping out the window to her death.

On the evening after the trial, following the jury's discharge, defense counsel encountered Eugene Johnson, one of the jurors in the case, as he exited the courthouse. Counsel asked the juror if he would mind talking with him about the deliberations. In reply to defense counsel's questions, Johnson stated that one of the women jurors had raised a question about the defendant's failure to testify but that the

foreman of the jury told her that they were to disregard this, and that no further discussion was had concerning that issue. Johnson also told defense counsel that he "had seen things like that happen before," and that in his own particular experience, he had had a sister who was beaten and killed by a pimp at a time when he was seven years old. He also mentioned that the incident had no bearing on his decision at the trial.[1]

At the hearing on defendant's motion for a new trial, Johnson was called as a witness for the defense. Johnson testified on direct examination that defense counsel had approached him, and that they had a conversation as described above. On cross-examination the State's Attorney asked Johnson whether despite what he had revealed to the court, he was able to render a fair and impartial verdict. Johnson responded affirmatively. He further stated that his experience had no bearing on his decision in the case, and that he had not discussed the incident with any other jurors. On redirect examination defense counsel questioned Johnson in the following manner:

"Q. Mr. Johnson, I spoke with you also yesterday regarding this matter, did I not?

A. Right.

Q. And when I spoke with you yesterday, you informed me that you had been to an attorney and been advised by him that you could be getting yourself into trouble by coming here to testify, is that right?

A. Right.

[ASSISTANT STATE'S ATTORNEY]: Objection.

THE COURT: The Court will sustain the objection to that question. That's beyond what is before the Court."

After arguments, the motion for a new trial was denied and sentencing hearing commenced.

OPINION

■■ We turn first to defendant's contention that the juror's failure to disclose that his sister had been the victim of a crime very similar

---

[1]At the *voir dire* examination conducted prior to trial, the trial court posed the following question to a group of prospective jurors: "Do any of you have close relatives, a husband or wife, or a sister or a brother, or son or daughter that [*sic*] has been the victim of a crime? If so, please stand." Juror Johnson did not stand in response to this question. He did, however, respond affirmatively to the question, "Have any of you *** ever been the victim of a crime?" He informed the court that he had been the victim of an armed robbery and that no one had ever been charged for that crime.

to the one for which he was tried denied him of his right to a trial by a fair and impartial jury. While it is firmly established that an accused's right to trial by an impartial jury is a basic right (*People v. Cole* (1973), 54 Ill. 2d 401, 298 N.E.2d 705), it is also recognized that a juror's failure to reveal potentially prejudicial information during *voir dire*, or even his false testimony during *voir dire*, does not automatically entitle a defendant to a new trial. (*Pekelder v. Edgewater Automotive Co.* (1977), 68 Ill. 2d 136, 368 N.E.2d 900; *People v. Logan* (1980), 87 Ill. App. 3d 351, 408 N.E.2d 1086; *People v. Farris* (1980), 82 Ill. App. 3d 147, 402 N.E.2d 629.) In *Pekelder*, the Illinois Supreme Court confirmed that the standard to be applied in cases, such as the instant one, is that of actual prejudice. (68 Ill. 2d 136, 139, 368 N.E.2d 900, 902.) A similar standard was recently upheld by the United States Supreme Court in *Smith v. Phillips* (1982), 455 U.S. 209, 71 L. Ed. 2d 78, 102 S. Ct. 940. The court there stated that due process does not require that a new trial be granted every time a juror has been placed in a potentially compromising situation and the remedy for allegations of jury impartiality is a hearing in which defendant has the opportunity to prove *actual* bias on the part of the juror. (*Smith*; but see *People v. Craig* (1977), 47 Ill. App. 3d 242, 361 N.E.2d 736, where the court held that the procedure to be used at the hearing on this issue rests within the discretion of the trial court.) In Illinois, the burden of showing that the juror is not impartial is on the party challenging the juror. (*Cole*.) The determination on this issue, however, rests in the sound discretion of the trial court, and in the absence of clear abuse, that discretion will not be disturbed on appeal. *Pekelder*; *Cole*; *Farris*; see also *McCoy v. Goldston* (6th Cir. 1981), 652 F.2d 654.

■ In the instant case the trial court conducted a hearing on defendant's motion for a new trial. Only Johnson gave testimony. He testified that despite the fact that his sister had been beaten and killed by a pimp when he was seven years old, he was able to render a fair and impartial verdict; that his experience had no bearing on his decision in the case; and that he had not discussed the incident with any other jurors. The trial court was apparently convinced of the truth of Johnson's testimony. The experience related by Johnson was not such as to require us to say that the court could not have accepted the truth of his statements. Under the circumstances we conclude that the trial court's determination as to the impartiality of this juror was not against the manifest weight of the evidence, and therefore we will not set it aside.

■ We note at this point that defendant has argued that the nat-

ure of Johnson's past personal experience was such that he should have been presumed to be biased as a matter of law. Although the Illinois Supreme Court has recognized that there are certain relationships which may exist between a juror and a party to the litigation which are so direct that a juror possessing them may be *presumed* to be biased (see generally *People v. Cole* (1973), 54 Ill. 2d 401, 413, 298 N.E.2d 705, 712; see also *Smith v. Phillips* (1982), 455 U.S. 209, 71 L. Ed. 2d 78, 102 S. Ct. 940 (O'Connor, J., concurring)), defendant here has shown no such relationship to exist between the juror and any party in this case, and thus we deem it unnecessary to consider this contention further.

Defendant next contends that he was precluded from demonstrating actual prejudice on the part of this juror when the trial court sustained the State's objection to the above-quoted questions touching upon the juror's consultation with his personal attorney. We disagree.

The question was posed evidently in an effort to discredit Johnson's testimony that he had rendered a fair and impartial verdict by calling attention to his attorney's admonition. While it is a general rule that a party who calls a witness to testify cannot directly impeach his testimony (*People v. Wesley* (1959), 18 Ill. 2d 138, 163 N.E.2d 500), and under Supreme Court Rule 238, "[t]he party calling an occurrence witness, upon the showing that he called the witness in good faith and is surprised by his testimony, may impeach the witness by proof of prior inconsistent statements" (73 Ill. 2d R. 238), the ultimate determination as to whether impeachment of a witness on the ground of surprise should be permitted is left to the sound discretion of the trial judge. *Wesley; People v. Kerans* (1982), 103 Ill. App. 3d 522, 431 N.E.2d 726.

■ The instant record reveals no attempt by defendant to make a showing of unexpected or surprise testimony arising from Johnson's testimony at the hearing. Indeed, from the representations of defense counsel at the hearing, it appears that Johnson's testimony in fact generally comports with his prior statements. In any case, defendant has made no offer of proof, has presented no affidavits and has offered no testimony inconsistent or contradictory to the testimony of his witness. Accordingly, we find that the trial court properly disallowed defense counsel to impeach Johnson by calling his attention to his former statements.

■ Finally, defendant argues that juror Johnson's silence during *voir dire* abrogated defendant's statutory right to peremptorily challenge him. (See Ill. Rev. Stat. 1981, ch. 38, par. 115—4(e).) Even assuming this is true, under the authorities we have cited above, in Illi-

nois a juror's failure to reveal potentially prejudicial or even his false testimony during *voir dire* entitled defendant to a post-trial hearing bearing upon the issue of actual prejudice or bias. Since the hearing and determination on this issue would have adequately protected defendant's right to due process of law, we can see no reason to hold that since defendant was prevented from availing himself of the peremptory challenge in such a manner, he should automatically be entitled to a new trial. See *Smith v. Phillips* (1982), 455 U.S. 209, 218-19 n.8, 71 L. Ed. 2d 78, 87 n.8, 102 S. Ct. 940, 946 n.8.

Defendant's reliance on *McCoy v. Goldston* (6th Cir. 1981), 652 F.2d 654, is misplaced. In that case the district court had refused to conduct a post-trial evidentiary hearing on the issue of a juror's probable bias. Further, a question existed as to whether the juror had deliberately concealed or purposefully given incorrect responses during *voir dire* sufficient to show a prejudicial impairment of the right of peremptory challenges. Unlike *McCoy*, defendant in the instant case was afforded a post-trial hearing on the issue of the juror's alleged bias and defendant presented no facts there which indicated that Johnson intentionally concealed or purposefully gave incorrect answers.

From the record we believe that defendant was tried by a fair and impartial jury.

For the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.

SULLIVAN and LORENZ, JJ., concur.