Rule 23 order filed
March 31, 2022.
Motion to publish granted
April 15, 2022.

2022 IL App (5th) 190427

NO. 5-19-0427

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Christian County. |
| | ) | |
| v. | ) | No. 13-CF-13 |
| | ) | |
| JONATHAN R. WATSON, | ) | Honorable |
| | ) | Bradley T. Paisley, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE BARBERIS delivered the judgment of the court, with opinion.
Presiding Justice Boie and Justice Moore concurred in the judgment and opinion.

**OPINION**

¶ 1    A Christian County jury found defendant, Jonathan R. Watson, guilty of the offense of attempted murder. This court affirmed defendant's conviction and sentence on direct appeal. See *People v. Watson*, 2017 IL App (5th) 140391-U. Defendant filed a *pro se* postconviction petition, raising numerous allegations of ineffective assistance of trial counsel. The circuit court denied the petition following a third-stage evidentiary hearing, where defendant was represented by court-appointed counsel. Defendant appeals the court's denial of his postconviction petition, arguing that (1) the court erred by failing to grant judgment on the pleadings in his favor at the second stage where the State elected not to file an answer, and (2) postconviction counsel provided unreasonable assistance. For the following reasons, we affirm.

1

¶ 2                                    I. Background

¶ 3      We set forth the background of this case extensively in defendant's direct appeal. See *id*. We recite only those facts necessary to our resolution of the instant appeal.

¶ 4      On May 21, 2013, the State filed a second amended information, charging defendant with one count of attempted first degree murder. *Id.* ¶ 4. The State alleged that on January 28, 2013, defendant intended to commit first degree murder, and " 'performed a substantial step toward the commission of that offense, in that he with the intent to kill William P. Shride, drove a 2009 Honda automobile at William P. Shride and struck William P. Shride with that automobile.' " *Id*.

¶ 5      On May 28, 2013, the case proceeded to a jury trial. *Id.* ¶ 6. Shride testified for the State, and defendant testified in his own defense. *Id*. ¶¶ 11-16, 25-27. The circuit court instructed the jury that to find defendant guilty of attempted first degree murder, the jury had to find beyond a reasonable doubt that defendant acted " 'with the intent to kill' " Shride. *Id*. ¶ 27. The court also instructed the jury that " '[a] person intends to accomplish a result or engage in conduct when his conscious objective or purpose is to accomplish that result or engage in that conduct.' " *Id*. After deliberating for approximately 45 minutes, the jury found defendant guilty of attempted first degree murder. *Id*. The court sentenced defendant to 15 years in prison, followed by a 3-year term of mandatory supervised release. *Id*.

¶ 6      On direct appeal, defendant argued that he did not receive a fair trial, because the State presented Shride's testimony regarding his medical diagnoses and prognoses following the January 28, 2013, incident, which constituted inadmissible hearsay. *Id.* ¶ 29. This court concluded that there was no error in Shride's testimony about his personal knowledge of his injuries, how they occurred, and how the injuries affected his ability to function, as well as the pain he experienced at the time defendant struck him with the car. *Id*. ¶ 31.

¶ 7    This court further determined that the evidence of defendant's intent to kill Shride was not closely balanced. *Id.* ¶ 32. This court concluded that there was unrebutted evidence, from multiple witnesses (including defendant), that defendant used a deadly weapon—the car he was driving that day—to strike Shride. *Id*. ¶ 33. In so concluding, this court stated that the direct and natural tendency of driving a car into an individual is to destroy that individual's life, and the jury, from this fact, could have inferred the intent to kill Shride. *Id*.

¶ 8    This court also noted that there was substantial evidence about the character of the incident from which the jury could have inferred defendant's intent to kill Shride, including evidence showing that defendant was agitated with Shride, defendant approached Shride at a high rate of speed before striking him, and defendant did not attempt to brake the car either before or after striking Shride. *Id*. Therefore, this court held that defendant failed to demonstrate the evidence of his intent to kill Shride was so closely balanced that Shride's testimony about the extent of his injuries alone severely threatened to tip the scales of justice against defendant. *Id.* ¶ 36.

¶ 9    On September 11, 2017, defendant filed a *pro se* petition for postconviction relief. Defendant alleged the following ineffective assistance of counsel claims: (1) trial counsel failed to call certain witnesses at trial, with whom defendant spoke to within 30 minutes of the attack, who would have testified that defendant lacked the specific intent to murder Shride; (2) trial counsel failed to call other witnesses defendant identified, specifically Brooke Peters, who would have countered the State's narrative that defendant fled the scene and hid in the basement of a friend's home in Decatur; (3) trial counsel failed to object when the State inappropriately interfered with the attorney-client privilege by asking defendant on cross-examination whether he had discussions with his attorney regarding the theory of no specific intent to kill; (4) trial counsel failed to point out that Shride exaggerated his injuries by claiming he had 16 screws inserted during surgery,

when the X-rays showed there were only 12 screws; (5) trial counsel failed to adequately cross-examine Shride about the extent and causation of his injuries, nor did counsel seek medical testimony discrediting Shride's injuries; (6) a juror misconduct issue prevented defendant from receiving a fair trial, where a juror was discovered to have read a press account of the trial, and then trial counsel indicated that he went to high school with the juror, the juror "owed him a favor," and would acquit; and (7) appellate counsel was ineffective for failing to raise the issues on direct appeal. Defendant supported the petition with an affidavit from himself, along with affidavits from Dawn McElroy and David Williams, two witnesses he claimed counsel should have called at trial.

¶ 10 At a December 11, 2017, hearing, the circuit court advanced the petition to the second stage and appointed counsel for defendant. Initial counsel withdrew, and on October 26, 2018, the court appointed defendant new counsel, William Farr, who supplemented the petition for postconviction relief the same day. Counsel supplemented the petition with the following claims: (1) defendant received ineffective assistance of counsel, where trial counsel was argumentative and disrespectful to the trial judge; (2) defendant received ineffective assistance of counsel where trial counsel, upon his cross-examination, only confirmed and solidified the State's evidence adduced upon direct examination; (3) defendant received ineffective assistance of counsel when his trial counsel did not object to defendant being questioned by the State as to his conversations with trial counsel; (4) the State committed prosecutorial misconduct by "delving into" the conversations between defendant and his trial counsel; (5) defendant received ineffective assistance of counsel when trial counsel did not show defendant any discovery, including Shride's medical records, nor did trial counsel discuss the evidence and discovery with defendant; (6) defendant received ineffective assistance of counsel when his trial counsel did not call certain witnesses whose testimony would benefit defendant; (7) defendant received ineffective assistance of counsel where trial counsel only

4

met with defendant once prior to trial; (8) there was insufficient evidence for a finding of guilty; (9) the jury erred by finding defendant had the intent to kill, where there was no evidence other than the use of an automobile that indicated defendant's intent to kill and defendant did not use a deadly weapon; (10) the jury was "not allowed to exercise its discretion" to determine whether an automobile constituted a deadly weapon; and (11) defendant received ineffective assistance of counsel where neither his trial counsel nor his appellate counsel raised any of the issues in the same manner as the supplemental petition.

¶ 11     Farr subsequently withdrew from the case, and the circuit court appointed defendant new counsel, Mike Drake (postconviction counsel). On April 9, 2019, postconviction counsel indicated at a hearing that he reviewed all transcripts and docket entries, spoke with defendant and prior counsel, and was prepared to file "a 604D certificate" in the matter. The court asked postconviction counsel "will there be additional pleadings or amended pleadings filed or are you going to stand on what's already on file?" Postconviction counsel responded: "I'll stand on what's on file." The court asked whether the parties wanted to schedule "an evidentiary hearing," and noted that the court would consider both factual and legal issues. The parties agreed to the scheduling of an evidentiary hearing.

¶ 12     On June 12, 2019, Farr filed a 651(c) certificate (Ill. S. Ct. R. 651(c) (eff. July 1, 2017)), stating that: (1) he was the former court-appointed counsel for defendant; (2) he consulted with defendant in person at the Centralia Correctional Center on May 11, 2018, and September 7, 2018; (3) he received and reviewed documents from defendant concerning these matters; (4) he examined the trial court files and the report of proceedings; (5) he took all such actions to ascertain defendant's contentions of error and to search for any errors missed by defendant; (6) he filed a supplemental motion to adequately present any defects in the proceedings; and (7) he withdrew

from the case due to a conflict of interest and a new public defender was appointed to represent defendant.

¶ 13    Later, on August 20, 2019, postconviction counsel Drake filed a certificate of attorney, stating that: (1) he consulted with defendant by telephone on August 16, 2019, (2) he consulted with defendant on numerous occasions at the Christian County courthouse, (3) he reviewed the documents from defendant concerning the case, (4) he reviewed the court files and report of proceedings, (5) he ascertained defendant's contentions of error and searched for any errors missed by defendant, and (6) he adopted the supplemental motion previously filed by attorney Farr in order to adequately present any defects in the proceedings.

¶ 14    At a hearing held on June 10, 2019, the State expressed that it was not ready to proceed, as the parties wished to call trial counsel as a witness given the ineffective assistance of counsel claims alleged in the petition. The State also expressed a desire to file a motion to dismiss. However, the State did not file a responsive pleading in the matter, and the court later advanced the supplemented petition to the third stage for an evidentiary hearing.

¶ 15    On August 19, 2019, the circuit court held the evidentiary hearing. Defendant testified, consistent with the allegations in his petition, that trial counsel should have called Dawn McElroy, Samantha Sellers, Riley Duncan, Holly Himmelrick, Melissa Cheatham, and David Williams, as witnesses during his jury trial. Defendant claimed that trial counsel failed to even speak with these witnesses prior to trial. Defendant testified that he was with Dawn McElroy, Riley Duncan, Holly Himmelrick, and David Williams, directly after the alleged crime occurred—within 30 minutes. Defendant testified that the witnesses knew of his "emotional state" and observed his demeanor shortly after the alleged crime. Defendant believed their testimonies would have offered evidence of intent.

6

¶ 16    Defendant testified that Samantha Sellers had information about the case because she spoke with his daughter's mother, who was a witness in the case. Defendant believed that Melissa Cheatham and Sellers would have testified regarding text message conversations they had with him, wherein they advised him to lie to law enforcement about the incident. Defendant admitted during his testimony that Brooke Peters was "not initially provided" to trial counsel, but defendant believed that Peters would have testified that defendant was asleep, not hiding, in her basement, following the alleged crime. None of the witnesses defendant identified testified at the hearing.

¶ 17    Defendant testified that he felt trial counsel asked inappropriate questions and interfered with attorney-client privilege when defendant testified at trial. Defendant testified that he did not believe trial counsel reviewed discovery prior to trial and that Shride was not forthcoming about his injuries. He also testified that his trial counsel's demeanor negatively impacted the circuit court's rulings at trial. Lastly, defendant testified that he confronted trial counsel after a juror committed misconduct, but trial counsel left the jury member empaneled, with trial counsel allegedly stating: "No, he owes me a favor. He won't find you guilty. I went to high school with him."

¶ 18    On cross-examination, defendant admitted that he identified seven witnesses who he believed would have testified at his trial, but that he only provided affidavits of Dawn McElroy and David Williams in the *pro se* postconviction petition. On redirect, defendant testified that he did not review the presentence investigation report.

¶ 19    The State called defendant's trial counsel, Greg Grigsby, who served as the public defender at the time of defendant's jury trial. Contrary to defendant's testimony, Grigsby testified that he reviewed discovery with defendant. Grigsby testified that he did not pursue the witnesses identified by defendant because the witnesses' statements regarding defendant's state of mind following the

crime constituted inadmissible hearsay, and the statements were not exculpatory. According to Grigsby, it was unnecessary to elicit testimony from medical professionals or an expert witness at defendant's trial, where no injury or information related to the severity of an injury was relevant for the offense of attempted first degree murder. After the parties presented evidence, the circuit court took the matter under advisement.

¶ 20 On September 30, 2019, the circuit court entered a written order denying the postconviction petition. The court initially noted that it appointed a public defender, who filed a supplement to the petition on August 19, 2019. Regarding the merits, the court first considered defendant's claim that trial counsel was ineffective for failing to call witnesses to testify as to defendant's state of mind shortly after the alleged crime. The court determined that the statements would not have been admissible under the hearsay rules, where defendant clearly wanted to offer the evidence to prove the truth of the matter asserted. The court further noted that the statements were not made to the witnesses at the time of the occurrence—rather, they were made 30 minutes after the alleged crime. As such, the court found that defendant failed to prove trial counsel was ineffective for failing to call the witnesses to testify at trial.

¶ 21 Next, regarding defendant's claim that Brooke Peters would counter the State's narrative that he fled from the scene of the attack and hid, the circuit court noted that defendant did not disclose Peters to trial counsel until after the State called a Decatur police officer to testify regarding the circumstances of defendant's arrest. The court noted that defendant accessed discovery through meetings with trial counsel, and he knew the State's narrative ahead of trial. Because defendant did not disclose Peters to trial counsel until after the trial commenced, the court determined that defendant could not now complain about ineffective assistance of counsel. In addition, the court noted that defendant admitted at trial that he was apprehended in a friend's

basement, and that he travelled on backroads to Decatur to avoid apprehension. The court specifically noted: "He claims certain witnesses would have countered the narrative that he was hiding when he clearly testified, he was hiding from the police." Moreover, according to the court, defendant testified that certain witnesses advised him to create a false narrative about the events, but he resisted and told the truth. For these reasons, the court concluded that defendant failed to present sufficient evidence to make a substantial showing that trial counsel provided ineffective assistance. The court further noted that even if defendant somehow could prove error, the evidence in this case on intent to kill was not closely balanced, as was already considered by this court on direct appeal.

¶ 22    Next, the circuit court considered defendant's claim regarding attorney-client privilege. The court noted that after a review of the trial transcripts, the State never asked questions related to discussions between defendant and his counsel. Instead, the State established on cross-examination that after his arrest, defendant initially spoke with police and told them that he blacked out and had no recollection of events. The State asked defendant whether he met with his attorney and reviewed the reports in the case, with the implication being that defendant was trying to change his story to fit the narrative. The court determined that there was no intrusion of the attorney-client privilege, and the claim was "baseless and devoid of one ounce of merit."

¶ 23    As to defendant's claim regarding how many screws Shride had in his body, the circuit court agreed with trial counsel's testimony at the evidentiary hearing that the nature and extent of Shride's injuries were not an issue at defendant's trial. The court noted that one can be convicted of attempted first degree murder even where there is no injury at all. The court also did not find credible defendant's claims that he was not shown discovery and only met with trial counsel once before trial. As to defendant's claim regarding trial counsel's alleged disrespect to the trial judge,

the court found no "single iota of truth in this allegation." The court noted: "There is nothing in the transcript that would ever support such an allegation. It is simply false."

¶ 24 Regarding defendant's allegation of juror misconduct, the circuit court noted that trial counsel denied making any statements regarding the juror in question. The court noted that given defendant's other false and misleading statements, where the court had the unique opportunity to evaluate the witnesses' testimony, demeanor, and way they testified, the court found trial counsel more credible than defendant on this issue. The court further noted that the transcript disclosed that the trial judge heard and ruled upon a juror misconduct issue during defendant's jury trial. The court noted that the trial judge individually questioned all jurors regarding media exposure, and that one juror stated that he read a story in the local paper. The court noted that, in response to inquiries made by the trial judge, the juror stated that the article did not affect his jury service, and he was able to confine his deliberations solely to the evidence at trial. Each attorney had an opportunity to question the juror, and trial counsel requested a moment alone with defendant before indicating that they had no objection to the juror continuing to serve.

¶ 25 For all these reasons, the court denied defendant's postconviction petition, finding the evidence in the case failed to support any claims raised by defendant.

¶ 26 This timely appeal followed.

¶ 27 II. Analysis

¶ 28 Defendant raises two main issues on appeal: (1) whether the circuit court erred by conducting an evidentiary hearing rather than granting judgment on the pleadings in favor of defendant after the State failed to file a responsive pleading, and (2) whether his postconviction counsel provided unreasonable assistance. We address these issues in turn.

¶ 29                           A. Judgment on the Pleadings

¶ 30    Defendant first argues that the circuit court followed an incorrect procedure during the proceedings on his postconviction petition. Specifically, defendant argues that the court should have entered judgment on the petition in his favor at the second stage of the proceedings, because the State failed to file a responsive pleading. Defendant maintains that the State, by failing to file a responsive pleading, "admitted" all well-pleaded facts. Thus, defendant claims that the court conducted "a completely unnecessary" third-stage evidentiary hearing. We disagree.

¶ 31    The issue of whether the court followed the correct procedure in postconviction proceedings presents a question of law subject to *de novo* review. *People v. Helgesen*, 347 Ill. App. 3d 672, 675 (2004). The Post-Conviction Hearing Act (Act) sets forth a procedural mechanism through which a defendant can claim that "in the proceedings which resulted in his or her conviction there was a substantial denial of his or her rights under the Constitution of the United States or of the State of Illinois or both." 725 ILCS 5/122-1(a)(1) (West 2008). The Act provides a three-stage process for the adjudication of postconviction petitions. *People v. English*, 2013 IL 112890, ¶ 23.

¶ 32    At the first stage, the circuit court independently assesses the petition, and if the court determines that the petition is "frivolous" or "patently without merit," the court can summarily dismiss it. 725 ILCS 5/122-2.1(a)(2) (West 2008); *People v. Edwards*, 197 Ill. 2d 239, 244 (2001). To survive the first stage, "a petition need only present the gist of a constitutional claim" (*People v. Gaultney*, 174 Ill. 2d 410, 418 (1996)), which is a "purposely low threshold for survival because most petitions are drafted at this stage by defendants with little legal knowledge or training" (*People v. Ligon*, 239 Ill. 2d 94, 104 (2010)).

¶ 33    If a petition is not dismissed at the first stage, it advances to the second stage, where an indigent petitioner can obtain appointed counsel and the State can move to dismiss it. 725 ILCS 5/122-2.1(b), 122-4, 122-5 (West 2008); *Edwards*, 197 Ill. 2d at 245-46. At the second stage, the court is "foreclosed from engaging in any fact-finding because all well-pleaded facts not rebutted by the record are to be taken as true." *People v. Phyfiher*, 361 Ill. App. 3d 881, 884 (2005) (citing *People v. Coleman*, 183 Ill. 2d 366, 380-81 (1998)). At the second stage, if the petitioner makes a substantial showing of a constitutional violation, the petition advances to the third stage, where the circuit court conducts an evidentiary hearing. 725 ILCS 5/122-6 (West 2008); *Edwards*, 197 Ill. 2d at 246.

¶ 34    At the third stage, a petitioner has the burden of proving a substantial showing of a constitutional violation. *People v. Pendleton*, 223 Ill. 2d 458, 472-73 (2006). "An attorney at the evidentiary hearing stage must argue the merits of the postconviction petitioner's claims as presented in the petition following review by counsel at the second stage." *People v. Marshall*, 375 Ill. App. 3d 670, 683 (2007). At the third stage, the circuit court "may receive evidentiary proof via affidavits, depositions, testimony, or other evidence, and may order the petitioner brought before the court." *People v. Gerow*, 388 Ill. App. 3d 524, 527 (2009). An evidentiary hearing allows the parties to "develop matters not contained in the trial record and, thus, not before the appellate court." *People v. Lester*, 261 Ill. App. 3d 1075, 1078 (1994).

¶ 35    Here, defendant's *pro se* petition for postconviction relief advanced to the second stage, and the circuit court appointed counsel for defendant. Defendant's appointed counsel filed a supplement to the *pro se* postconviction petition, and his new postconviction counsel later adopted the supplement to the petition. The State initially expressed an intention to file a motion to dismiss but ultimately did not file a response to the petition and supplement.

¶ 36    As noted, upon advancement to the second stage, the State had the option of filing a motion to dismiss the petition pending before the circuit court. *Pendleton*, 223 Ill. 2d at 472. In the instant case, the State did not respond. The court then advanced the petition to the third stage for an evidentiary hearing. While it is not entirely clear from the record, we presume that, in doing so, the court accepted as true all well-pleaded facts alleged in the *pro se* postconviction, along with the supplement, and found defendant made a substantial showing of a constitutional violation. Based on our reading of the statutory provisions cited above, we find no error in the procedure followed by the court in this case.

¶ 37    Defendant does not take issue with the circuit court's finding that the allegations in his petition made a substantial showing of a constitutional violation. Instead, defendant asserts that the court should have granted judgment in his favor because the State "admitted" all well-pleaded facts by failing to file a responsive pleading at the second stage of the proceedings.

¶ 38    Defendant does not cite, and our research fails to reveal, a provision in the Act that would require a circuit court to grant judgment in favor of a petitioner at the second stage of the postconviction proceedings based on the State's failure to file a responsive pleading. Although defendant cites various criminal and civil cases in his brief, none of those cases stand for the proposition that the State admits all well-pleaded facts in a postconviction petition by failing to file a response at the second stage of the proceedings. In our view, the State's failure to file a responsive pleading at the second stage of the proceedings has no bearing on the requirement that a petitioner present sufficient evidence of a substantial constitutional violation at the third stage of the proceedings. Therefore, we reject defendant's argument that the court erred by conducting a third-stage evidentiary hearing on the postconviction petition and supplement.

¶ 39                          B. Unreasonable Assistance

¶ 40    Defendant alternatively argues that postconviction counsel provided unreasonable assistance during the second and third stages of the postconviction proceedings. Specifically, defendant argues that postconviction counsel provided unreasonable assistance by failing to (1) move for a judgment on the pleadings at the second stage of the proceedings, (2) amend the *pro se* petition to shape his claims into proper legal form, and (3) properly support his claims at the third-stage evidentiary hearing. We disagree.

¶ 41    The question of whether a petitioner received a reasonable level of assistance is reviewed *de novo*. *People v. Wallace*, 2018 IL App (5th) 140385, ¶ 31. The right to counsel in postconviction proceedings is based in statute—not the federal and state constitutions. See 725 ILCS 5/122-4 (West 2016). Therefore, postconviction petitioners are only guaranteed the level of legal assistance required by the Act. *People v. Owens*, 139 Ill. 2d 351, 364 (1990). While a reasonable level of assistance is required by section 122-4 of the Act (725 ILCS 5/122-4 (West 2016)) and Illinois Supreme Court Rule 651(c) (eff. July 1, 2017), defendants are not guaranteed the same level of legal assistance constitutionally guaranteed to defendants at trial. *Pendleton*, 223 Ill. 2d at 472; *People v. Greer*, 212 Ill. 2d 192, 204 (2004); *Owens*, 139 Ill. 2d at 364.

¶ 42    One aspect of "reasonable assistance" is compliance with Rule 651(c). Ill. S. Ct. R. 651(c); *People v. Daniels*, 388 Ill. App. 3d 952, 960 (2009) (citing *People v. Bashaw*, 361 Ill. App. 3d 963, 967 (2005)). To ensure reasonable assistance, Rule 651(c) requires that the record in postconviction proceedings demonstrate that postconviction counsel meet three specific obligations. *People v. Lander*, 215 Ill. 2d 577, 584 (2005). Counsel must (1) consult with the defendant to ascertain his claims of error, (2) examine the trial court record, and (3) make any amendments to the petition that are necessary to adequately present the defendant's claims to the

14

postconviction court. Ill. S. Ct. R. 651(c). The duty to amend the petition requires postconviction counsel to "shape[ ] the petitioner's claims into proper legal form." *People v. Perkins*, 229 Ill. 2d 34, 43-44 (2007). Appointed counsel must make amendments deemed necessary to "adequately" present the claims the defendant raised in the *pro se* petition. *Wallace*, 2018 IL App (5th) 140385, ¶ 30 (citing *People v. Turner*, 187 Ill. 2d 406, 412 (1999)).

¶ 43    A Rule 651(c) certificate filed by appointed counsel presents a rebuttable presumption that counsel provided reasonable assistance. *People v. Profit*, 2012 IL App (1st) 101307, ¶ 19. The defendant has the burden to overcome this presumption by establishing that his or her appointed counsel did not comply with the mandatory Rule 651(c) duties. *Id.*

¶ 44    Here, both Farr and postconviction counsel Drake filed 651(c) certificates. Accordingly, defendant bears the burden of overcoming the presumption that postconviction counsel provided reasonable assistance at the second stage of proceedings. Defendant attempts to rebut the presumption by arguing that postconviction counsel failed to move for judgment on the pleadings and failed to amend the postconviction petition to shape his claims into an appropriate legal form.

¶ 45    First, we reject defendant's argument that postconviction counsel provided unreasonable assistance by failing to move for judgment on the pleadings at the second stage of the proceedings. As previously determined, there is no legal authority supporting defendant's assertion that he was entitled to a judgment on the pleadings at the second stage of the postconviction proceedings based on the State's failure to file a responsive pleading. Therefore, postconviction counsel did not provide unreasonable assistance by failing to file such motion at the second stage of the proceedings.

¶ 46    Additionally, we reject defendant's argument that postconviction counsel provided unreasonable assistance by failing to amend the *pro se* petition to shape his claims into an

appropriate legal form. Defendant argues that counsel should have filed an amended petition that included any missing allegations. Contrary to defendant's argument, the record demonstrates that Farr altered defendant's *pro se* postconviction petition by filing a "supplement to petition for post-conviction relief" reshaping defendant's *pro se* claims and raising additional allegations. Specifically, Farr raised additional claims of ineffective assistance of trial counsel, an allegation of prosecutorial misconduct, and issues related to the sufficiency of the evidence. Postconviction counsel subsequently adopted the petition and supplement, as shown in counsel's 651(c) certificate. Moreover, because the circuit court advanced the petition and supplement to the third stage, it appears that the supplement was sufficient to shape defendant's claims into "an appropriate legal form." Accordingly, defendant fails to rebut the presumption that postconviction counsel substantially complied with Rule 651(c) and provided the reasonable assistance contemplated by the Act. *Profit*, 2012 IL App (1st) 101307, ¶¶ 19, 31.

¶ 47    Finally, we reject defendant's argument that postconviction counsel provided unreasonable assistance by failing to properly support the claims raised in the petition at the third-stage evidentiary hearing. In doing so, we note that Rule 651(c) only applies to counsel at the second stage of postconviction proceedings. *People v. Pabello*, 2019 IL App (2d) 170867, ¶¶ 26-35; *People v. Marshall*, 375 Ill. App. 3d 670, 681-83 (2007). To determine the general reasonableness standard during third-stage proceedings, *People v. Hotwagner*, 2015 IL App (5th) 130525, is instructive.

¶ 48    In *Hotwagner*, this court explained that trial counsel and postconviction counsel serve different roles, because a postconviction petitioner has "already been stripped of the presumption of innocence," and because the right to postconviction counsel is not constitutionally required, the reasonable level of assistance required under the Act is not coextensive with the level of assistance

16

required under *Strickland v. Washington*, 466 U.S. 668 (1984). (Internal quotation marks omitted.) *Hotwagner*, 2015 IL App (5th) 130525, ¶ 37. This court noted that the Act does "not guarantee that [a petitioner] will receive the same level of assistance that the Constitution guarantees to defendants at trial." (Internal quotation marks omitted.) *Id.* This court noted that "*Strickland* is thus not applicable" or at least "not automatically applicable" to claims that postconviction counsel's assistance was less than reasonable. (Internal quotation marks omitted.) *Id.* This court recognized that although *Strickland* "is not the relevant standard" for addressing such claims, "the *Strickland* test is an essential standard for comparison." (Internal quotation marks omitted.) *Id.* This court reasoned that, if postconviction counsel's assistance cannot be deemed ineffective under *Strickland*, it cannot be deemed unreasonable under the Act. *Id.* Thus, we measure counsel's performance at the third-stage hearing to see if it passes the higher *Strickland* standard. If it does, then it necessarily meets the lesser reasonableness standard.

¶ 49 According to defendant, postconviction counsel failed to call seven witnesses named in his petition to testify at the third-stage evidentiary hearing. Defendant maintains that many of the named witnesses would have testified regarding his state of mind following the alleged crime, and one witness would have testified that he was not hiding in a basement following the alleged crime. In denying the postconviction petition, however, the circuit court found that testimony about defendant's state of mind 30 minutes after the alleged crime did not constitute exculpatory evidence, nor would it offer any insight in determining defendant's intent at the time he struck Shride with the car. The court also found that the testimony constituted inadmissible hearsay. Moreover, the court found that defendant's own trial testimony contradicted the witness testimony that he was not hiding following the alleged crime. Defendant does not challenge the proprietary of the court's findings on appeal.

¶ 50 Where testimony related to defendant's state of mind did not offer exculpatory value, nor would the testimony have been admissible under the hearsay rules, postconviction counsel's choice not to call the witnesses did not prejudice defendant and thereby did not violate *Strickland*. Because postconviction counsel's performance satisfied the higher standard set forth in *Strickland*, his performance during the third stage of proceedings was reasonable.

¶ 51                                                      III. Conclusion

¶ 52 For the reasons stated above, we affirm the denial of defendant's postconviction petition following a third-stage hearing.


¶ 53 Affirmed.

_____

No. 5-19-0427
_____

| | |
|---|---|
| **Cite as:** | *The People of the State of Illinois v. Jonathan R. Watson*, 2022 IL App (5th) 190427 |

_____

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Christian County, No. 13-CF-13, the Hon. Bradley T. Paisley, Judge, presiding. |

_____

| | |
|---|---|
| **Attorneys for Appellant:** | James E. Chadd, Catherine K. Hart, Darrel F. Oman, of Office of the State Appellate Defender, Springfield, IL, for appellant |

_____

| | |
|---|---|
| **Attorneys for Appellee:** | Michael M. Havera, Johnson County State's Attorney, Patrick Delfino, Patrick D. Daly, Sharon Shanahan, of Office of the State's Attorneys Appellate Prosecutor, of Mt. Vernon, IL, for appellee |

_____