2020 IL App (1st) 171899-U

SECOND DIVISION
October 31, 2023

No. 1-17-1899

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 93 CR 2873 |
| | ) | |
| EDWARD HANKS, | ) | Honorable |
| | ) | Ursula Walowski, |
| Defendant-Appellant. | ) | Judge Presiding. |

_____

PRESIDING JUSTICE HOWSE delivered the judgment of the court.
Justices McBride and Cobbs concurred in the judgment.

ORDER

¶ 1    *Held*:   The judgment of the circuit court of Cook County denying defendant's postconviction petition is affirmed; following an evidentiary hearing defendant failed to prove that the trial court denied defendant his right to due process; defendant failed to establish by a preponderance of the evidence that a juror at defendant's trial was unconstitutionally biased against him.

¶ 2    Following a jury trial, the circuit court of Cook County convicted defendant, Edward Hanks, of aggravated criminal sexual assault and armed robbery. Defendant filed a petition for postconviction relief, which the trial court dismissed at the second stage of postconviction proceedings. Upon remand for a third stage evidentiary hearing, defendant failed to adduce any evidence that a juror in his trial had information the trial court had excluded from evidence.

Therefore, defendant did not make a substantial showing of a violation of his due process right to an impartial jury.

¶ 3                                    BACKGROUND

¶ 4     We have previously discussed the facts of the underlying case and the subsequent proceedings that have led to this appeal following a third stage evidentiary hearing on defendant's petition for postconviction relief. This court has already addressed defendant's direct appeal of the conviction (*People v. Hanks*, 307 Ill. App. 3d 1069 (1999) (*Hanks I*)), the trial court's summary dismissal of defendant's *pro se* petition for postconviction relief (*People v. Hanks*, 335 Ill. App. 3d 894 (2002) (*Hanks II*)), and the judgment dismissing defendant's petition at the second stage of postconviction proceedings (*People v. Hanks*, 2020 IL App (1st) 171899-U (2020) (*Hanks III*)). We restate the facts here only briefly to set the proper context for this disposition.

¶ 5     That context must begin with the acknowledgment that defendant's petition for postconviction relief is from a 1997 judgment of the circuit court convicting defendant of aggravated criminal sexual assault and armed robbery, and that in 2000, defendant began postconviction proceedings arguing that a juror who decided his case may have been in possession of information that had been excluded from the trial (defendant's prior conviction for the same offense). The postconviction court summarily dismissed defendant's initial *pro se* petition for postconviction relief and this court reversed the trial court's judgment. Upon its return to the circuit court and the appointment of counsel to represent defendant, the State filed a motion to dismiss the petition. The trial court granted the State's motion to dismiss, and this court again reversed the postconviction court's judgment.

¶ 6    When this court reversed the postconviction court's judgment dismissing defendant's petition for postconviction relief at the second stage, we ordered the postconviction court to conduct a third-stage evidentiary hearing and to complete that hearing within 180 days of the issuance of this court's mandate. *Hanks III*, 2020 IL App (1st) 171899-U, ¶ 50. We found that at the second stage of postconviction proceedings the issue was whether defendant, in his petition, had come forward with specific, detailed, nonconjectural evidence of partiality. *Hanks III*, 2020 IL App (1st) 171899-U, ¶ 46. We held defendant had done so; and, consequently, defendant was entitled to a third stage evidentiary hearing (*id.* ¶ 47).

¶ 7    Third stage proceedings did not begin until May 2021. Defendant's postconviction counsel informed the trial court that this court anticipated two witnesses: defendant's brother and the allegedly biased juror. Postconviction counsel informed the postconviction court the juror was deceased. The parties proceeded with opening statements. In the opening statement postconviction counsel stated the juror, now deceased, "had been exposed to [defendant,] and information about [defendant] prior to trial, denying [defendant] an impartial jury and a fair trial." Postconviction counsel stated: "We are asking, in accordance with [defendant's] rights, to a fair jury trial; due process; fundamental fairness; [defendant's] rights guaranteed under the fifth and sixth amendments to the United States Constitution; and his rights under the Illinois Constitution that he be granted a new trial."

¶ 8    After a continuance the hearing recommenced in June 2021. Defendant's brother was the only witness to testify, and he testified consistently with the prior proceedings. Defendant's brother testified he attended defendant's trial after the jury had been selected. He did not attend jury selection. Defendant's brother testified he recognized the juror during the trial. He testified his statement in his affidavit, that he did not recognize the juror until after the trial, was incorrect.

1-17-1899

Defendant's brother recognized the juror because they were both employed by the Hyatt Regency hotel with defendant. Defendant's brother worked as a chef and defendant and the juror both worked in housekeeping. Defendant's brother notified his brother that he recognized the juror. The defendant then submitted defendant's brother's affidavit into evidence. The trial judge asked defendant's brother whether he had "[a]ny idea when they had worked together if they had any interaction, any of that, or is it just somebody you are recognized that worked in housekeeping and your brother worked in housekeeping period?" Defendant's brother testified the trial judge was correct.

¶ 9 In closing argument postconviction counsel argued the juror "could have known [defendant] and formed an opinion about him and this case." Postconviction counsel cited caselaw in which, counsel stated, "the trial court conducted evidentiary hearings into the juror's impartiality" and that this court had "noted the trial court's error in failing to conduct an evidentiary hearing to protect [defendant's] constitutional rights." Counsel argued that "[a]t the very least, *** we do believe that [(an evidentiary hearing)] should have been done in this case." Postconviction counsel continued:

"[The juror's] proximity to [defendant] as she was his coworker could certainly have compromised her impartiality and open-mindedness as a juror. *** What happened in this case with the juror and [defendant's brother's] outcry and the way it was handled or not handled gives the appearance of a lack of due process and fundamental fairness of the jury and the trial process. It undermines the perception of fairness of the trial process and gives the appearance that my client did not receive a fair trial in violation of his federal and state constitutional rights."

- 4 -

Postconviction counsel concluded: "We ask, Your Honor, for these reasons for a new trial."

¶ 10    In its closing argument, the State asserted that this court "focused on the case of *Towns*, \*\*\* which said that a hearing may be necessary [and] set forth exactly what \*\*\* the petitioner in a postconviction matter must set forth in order for a court to determine to hold a hearing." The State said this hearing was "like an inquiry first and then you hold the hearing." The State noted that defendant had "not set forth any evidence that [defendant and the juror] would have any interaction." The State asserted that defendant had to "show [the juror's] state of mind in that she actually recognized the defendant, knew the defendant or knew of the brother, knew of a prior conviction of the [defendant,] remembered that prior conviction at the jury selection or throughout the trial. All of that would be needed in order to have the court do a—feel the necessity to do a hearing, and yet we don't have any of that." The State concluded:

> "So as far as being a due process violation in what we have here was \*\*\*
> no showing that by the court's discretion there should have been a further hearing
> in regards to this issue."
>
> * * *
>
> So again, \*\*\* there is certainly nothing that rises to any specific detail that
> the court should have under its discretionary authority back in 1997 even had
> [defendant's brother] testified or talked to the court or there being any further
> hearing or bringing [the juror] back in to question her about her serving on this
> jury."

¶ 11    Following the arguments the trial court ruled as follows:

"I don't find that [defendant's brother] is being—that he was not credible. I find that this is a long time ago, he doesn't remember. He generally remembers that he saw a juror that he recognized and that juror did, in fact, work at the Hyatt Regency O'Hare. I don't know that those facts are disputed and I don't find that the State has argued that those facts are disputed.

So as far as the factual finding I look at that as, okay, there was a juror that worked at the same location as the defendant, but 'that's--really all I have. I don't have--the allegations by the defense that she knew about his prior conviction and that she was biased is what the defense has to succeed in in an evidentiary hearing where I judge credibility of these witnesses.

* * *

I just don't find that's enough to jump to the next level that she knew about a prior conviction, that she was biased against him, especially based on the record and the way she answered the questions previously, so I don't see that this is enough. I don't have a problem with [defendant's brother's] testimony at all as to his credibility, but accepting that testimony does not automatically jump to that [defendant] was denied due process or was denied effective assistance of counsel based on that mere fact when there's nothing else, no other evidence at all to point to the fact that this juror was somehow biased or somehow knew about a conviction.

I find that is a pretty steep jump that just because of the nature of the work relationship if there even was a relationship. I mean, all I know is that they worked in the same Hyatt Regency O'Hare in Rosemont at the same time at some

point. So respectfully, Ms. Watt and Mr. Hanks, I'm going to dismiss your petition."

¶ 12    This appeal followed.

¶ 13                                   ANALYSIS

¶ 14    "To be entitled to postconviction relief, a defendant must establish a substantial deprivation of federal or state constitutional rights in the proceedings that produced the challenged judgment." *People v. English*, 2013 IL 112890, ¶ 21. In this case we have previously explained the Act's three-stage process and at this point in the proceedings our focus is on the third-stage postconviction evidentiary hearing. "At this stage, the circuit court must determine whether the evidence introduced demonstrates that the petitioner is, in fact, entitled to relief." *People v. Domagala*, 2013 IL 113688, ¶ 34. "At the third stage, a defendant has the burden of proving a substantial constitutional violation. [Citation.] The evidentiary hearing allows the parties to develop matters not contained in the trial record and, thus, not before the appellate court." *People v. Pabello*, 2019 IL App (2d) 170867, ¶ 21. "An attorney at the evidentiary hearing stage must argue the merits of the postconviction petitioner's claims as presented in the petition following review by counsel at the second stage." (Internal quotation marks omitted.) *People v. Watson*, 2022 IL App (5th) 190427, ¶ 34. "Following an evidentiary hearing where fact-finding and credibility determinations are involved, the trial court's decision will not be reversed unless it is manifestly erroneous." *People v. Beaman*, 229 Ill. 2d 56, 72 (2008).

¶ 15    In this case, at the second stage, defendant was "charged only with making a substantial showing he did come forward with the required specific, detailed, nonconjectural evidence." *Hanks III*, 2022 IL App (1st) 171899-U, ¶ 26.  We held defendant met that burden. *Id.*  In this appeal, the dispute can be distilled to a disagreement as to the scope of the third stage evidentiary

hearing. The State's position is that defendant had to prove his claim that the juror was biased and defendant failed to do so. Defendant maintains, in effect, that he only had to prove the right to a hearing into the question of whether the juror was biased and defendant succeeded. (In a related argument the State argues unsuccessfully the trial court actually did conduct the required hearing.) We must agree with the State based on this court's precedent.

¶ 16    We hold that at the third stage the trial court was required "to conduct a hearing, during which the juror could be cross-examined, to determine what she knew and how it affected her." *Hanks III*, 2022 IL App (1st) 171899-U, ¶ 26.

> " 'An attorney at the evidentiary hearing stage must argue the merits of the postconviction petitioner's claims as presented in the petition following review by counsel at the second stage.' [Citation.] At the third stage, the circuit court 'may receive evidentiary proof via affidavits, depositions, testimony, or other evidence, and may order the petitioner brought before the court.' [Citation.] An evidentiary hearing allows the parties to 'develop matters not contained in the trial record and, thus, not before the appellate court.' [Citation.]" *People v. Watson*, 2022 IL App (5th) 190427, ¶ 34 (quoting, *inter alia*, *People v. Marshall*, 375 Ill. App. 3d 670, 683, (2007)).

See also *People v. Coe*, 2021 IL App (4th) 200233, ¶ 106 ("In an evidentiary hearing on a postconviction petition, the defendant has the burden of proving, by a preponderance of the evidence, a substantial violation of a constitutional right." (citing *People v. Coleman*, 2013 IL 113307, ¶ 92)). "To decide whether the defendant has carried that burden, the circuit court, as the trier of fact, must make credibility determinations and must weigh the evidence." *Id.* (citing *People v. Reed*, 2020 IL 124940, ¶ 51).

¶ 17    The purpose of the third stage proceeding is for "the trial court [to] conduct[] an evidentiary hearing to determine *whether a new trial is warranted*." (Emphasis added.) See *People v. Rosalez*, 2021 IL App (2d) 200086, ¶ 92 (actual innocence claim). If defendant were correct, and this matter should return to the "trial court"[1] for purposes of a substantive proceeding on the claimed constitutional error, then postconviction proceedings would have ceased at the second stage. See *Marshall*, 375 Ill. App. 3d at 673 (noting earlier decision to remand for substantive evidentiary hearing on the defendant's claim that her trial attorney was ineffective). In *Marshall*, for example, this court found that an " 'an evidentiary hearing would *** provide the trial court with sufficient facts to determine whether defendant received ineffective assistance of counsel.' "). *Id*.

¶ 18    In our disposition reversing the second-stage dismissal of defendant's postconviction petition and remanding for a third-stage evidentiary hearing, we attempted to make clear that the issue at the second stage was not whether defendant had come forward with specific facts to establish that the juror was biased. *Hanks III*, 2020 IL App (1st) 171899-U, ¶¶ 43, 46. Instead, the issue was whether defendant presented sufficient facts to establish that the juror may have been biased because the juror may have been aware of inadmissible evidence thereby requiring the trial court to conduct a hearing into the juror's potential bias. *Id*. Now, at the evidentiary hearing stage, defendant had the burden to establish by a preponderance of the evidence that the juror "recognized or knew defendant or knew about his prior conviction," or other evidence the

---

[1]    Although the Act contemplates that a postconviction petition may be heard by the same trial judge who presiding over the trial, it is "well-settled law" that a postconviction proceeding is not "not part of the criminal process but rather collateral civil proceedings. [Citation.] This means the filing of a postconviction petition does not continue the underlying criminal case ***." (Internal quotation marks omitted.) *People v. Hill*, 2022 IL App (1st) 171739-B, ¶ 23.

juror was biased against him, which required the postconviction court to "engage in any fact-finding or credibility determinations." *People v. Coleman*, 2013 IL 113307, ¶ 92 ("[i]n a post-conviction hearing the burden of proof is upon the petitioner to show a denial of [a] constitutional right by a preponderance of the evidence."); *People v. Brown*, 2020 IL App (1st) 190828, ¶ 43 ("at the third stage of postconviction proceedings, *** 'the burden of proof is upon the petitioner to show a denial of [a] constitutional right by a preponderance of the evidence.' " (Internal quotation marks omitted.) *Coleman*, 2013 IL 113307, ¶ 92).

¶ 19    Turning to the substance of the claimed constitutional violation, we find defendant failed to satisfy his burden to establish by a preponderance of the evidence that the juror was biased. "[A]n accused's right to trial by an impartial jury is a basic right." *People v. Hunt*, 112 Ill. App. 3d 138, 141 (1983). "[T]he standard to be applied in cases, such as the instant one, is that of actual prejudice." *Id*.

> "[D]ue process does not require a new trial every time a juror has been placed in a potentially compromising situation. Were that the rule, few trials would be constitutionally acceptable. The safeguards of juror impartiality, such as *voir dire* and protective instructions from the trial judge, are not infallible; it is virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote. Due process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen. Such determinations may properly be made at a hearing ***."
> *Smith v. Phillips*, 455 U.S. 209, 217 (1982).

"The determination on this issue *** rests in the sound discretion of the trial court, and in the absence of clear abuse, that discretion will not be disturbed on appeal." *Hunt*, 112 Ill. App. 3d at 141. An abuse of discretion occurs when the trial court's ruling is arbitrary, fanciful, or unreasonable or when no reasonable person would take the view adopted by the trial court. *People v. Cook*, 2018 IL App (1st) 142134, ¶ 29.

¶ 20     Defendant argues that at the third stage of postconviction proceedings he was denied his right to a full and fair hearing on his claim of juror partiality where (1) the trial court relied on the State's *ex parte* communications with the juror at the time of trial and (2) the juror's death has precluded defendant from questioning the juror under oath. We reject defendant's argument that the postconviction court failed to conduct an evidentiary hearing that comports with the requirements of due process. This is not a situation where the trial court "refused to hear testimony on allegations which, if true, would require a new trial." *People v. Witte*, 115 Ill. App. 3d 20, 30 (1983). This is a situation where defendant did not offer any testimony which, if true, would require a new trial. Compare *id.* Moreover, *Witte* is distinguishable as a direct appeal and not a postconviction proceeding. "Throughout the second and third stages of a postconviction proceeding, the defendant bears the burden of making a substantial showing of a constitutional violation." *People v. Pendleton*, 223 Ill. 2d 458, 473 (2006).

¶ 21     We are sympathetic to defendant's argument that his ability to question the juror to establish actual bias is "now impracticable" and defendant's plight in light of the juror's death. Nonetheless, defendant was not "left without any legally cognizable remedy." The evidence in support of a claim of juror impartiality is not limited to the sworn testimony of the juror. See *Smith*, 455 U.S. at n7 (determination will "frequently" turn upon testimony of the allegedly biased juror). Rather, determination on the issue and the procedure to be used at the hearing

rests in the sound discretion of the trial court, and in the absence of clear abuse, that discretion will not be disturbed on appeal. *Hunt*, 112 Ill. App. 3d at 141. A hearing "with all interested parties permitted to participate" (*Smith*, 455 U.S. at 216) at "which the "defendant has the opportunity to prove actual bias on the part of the juror" (*Hunt*, 112 Ill. App. 3d at 141) with evidence of "the circumstances, the impact thereof upon the juror, and whether or not [they were] prejudicial" (*Smith*, 455 U.S. at 216), is not an abuse of discretion. *Smith*, 455 U.S. at 217 and n 7. Defendant's claim that he "has been completely foreclosed from participating in a hearing wherein he would have the opportunity to prove actual bias" is a complete overstatement.

¶ 22 The only evidence defendant adduced at the hearing came from defendant's brother. Nothing in that evidence established by a preponderance of the evidence that the juror was biased against defendant or that anything prevented the juror from deciding the case solely on the evidence properly before the jury. Defendant failed to secure sworn testimony, either by affidavit or deposition, of the juror in the over two decades this case was pending. Aside from defendant's failure to secure the juror's affidavit or sworn testimony before her death, we also note that defendant failed to adduce evidence this juror, or any member of the housekeeping staff with whom this juror was friendly or even acquainted with for that matter, was aware of defendant's arrest when it happened or that she or anyone else recalled those events. We will not speculate what evidence defendant would have come up with in light of the juror's death but we recognize that such evidence could have included interviews of other jurors indicating this juror discussed defendant's arrest, or interviews with other employees indicating this juror knew, or everybody knew, about defendant's arrest; interviews with the juror's son indicating whether this juror told the son the juror remembered defendant and the fact of his arrest.

¶ 23    Where defendant's brother's testimony did not address the juror's actual partiality but only offered a speculative basis for the conjecture that the juror was biased, we find that defendant failed to adduce any evidence in support of his claim. Therefore, defendant's argument fails. We thus have no need to resolve the State's argument that the trial court did conduct an evidentiary hearing at the third stage.

¶ 24    Defendant offered no evidence to prove the juror's "exposure to such highly prejudicial information" as defendant's prior conviction for the same offense. The trial court correctly found that "[s]o as far as the factual finding *** there was a juror that worked at the same location as the defendant, but 'that's really all I have. I don't have--the allegations by the defense that she knew about his prior conviction and that she was biased is what the defense has to succeed in in an evidentiary hearing ***.'" In the absence of such evidence we cannot find defendant proved that his right to a trial by an impartial jury was violated. Because defendant failed to establish by a preponderance of the evidence that the juror was biased, the trial court did not abuse its discretion in holding defendant failed to establish his right to a new trial.

¶ 25    Lastly, we also allowed defendant's claim of ineffective assistance of appellate counsel to proceed "because defendant's claim underlying [the] postconviction claim of ineffective assistance of appellate counsel [had] merit." *Hanks III*, 2020 IL App (1st) 171899-U, ¶ 47. Based on our holding that defendant's claim, that he was denied his right to due process because one of his juror's was biased against him, fails—because defendant failed to prove a denial of his constitutional right by a preponderance of the evidence following a constitutional evidentiary hearing—we also must hold that defendant cannot establish prejudice from appellate counsel's failure to raise the biased juror argument on appeal. "Unless the underlying issue is meritorious, petitioner suffered no prejudice from counsel's failure to raise it on direct appeal. [Citation.]

Further, it is essential that a postconviction claim of ineffective assistance of appellate counsel set forth an error of constitutional dimension that occurred during the trial, which counsel failed to raise on direct appeal.  [Citation.]" *People v. Dixon*, 2022 IL App (1st) 200162, ¶ 32.

¶ 26    In this case, the underlying issue is not meritorious, and defendant failed to prove an error of constitutional dimension that occurred during the trial by failing to prove by a preponderance of the evidence that one of his jurors was unconstitutionally biased.  Therefore, defendant's claim of ineffective assistance of appellate counsel also fails.

¶ 27    Accordingly, the trial court's judgment denying defendant's petition for postconviction relief is affirmed.

¶ 28                                         CONCLUSION

¶ 29    For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

¶ 30    Affirmed.